QUINCY RETIREMENT BOARD *vs.* CONTRIBUTORY
RETIREMENT APPEAL BOARD
(and a companion case[1]).

Norfolk.   October 8, 1959. — December 10, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, &
WHITTEMORE, JJ.

*Retirement. Fireman. Words, "Disability."*

A medical panel, appointed under G. L. c. 32, § 6, in connection with an application for accidental disability retirement under § 7 by a lieutenant in a city fire department who had suffered an injury impairing the flexibility of his knee, observed an incorrect standard of law in re-

---

[1] The companion case is Walter L. Cooke *vs.* Quincy Retirement Board.

fusing to certify the applicant to be totally and permanently disabled by the injury because, although unable to perform the usual duties of a lieutenant in fighting fires, he could do sedentary work in the fire department. [60]

Upon appeal to the contributory retirement appeal board under G. L. c. 32, § 16 (4) from a decision of a local retirement board denying an application for accidental disability retirement under § 7 because the medical panel had refused to certify total and permanent incapacity of the applicant, the appeal board, upon an appropriate medical record, had power to find the applicant totally and permanently disabled and to order the local board to grant the application notwithstanding the absence of a certification by the medical panel. [61]

Medical evidence before the contributory retirement appeal board, without the employment of a physician by it, justified a determination by it that a lieutenant in a city fire department, by reason of an injury to his knee impairing its flexibility, was unable to perform the usual duties of a lieutenant in fighting fires and was totally and permanently incapacitated within G. L. c. 32, § 7, although he could do sedentary work in the fire department. [61–62]

PETITION for a writ of certiorari filed in the Superior Court on August 5, 1953.

PETITION for a writ of mandamus filed in the Superior Court on September 10, 1953.

The cases were heard together by *Donahue, J.* The Quincy retirement board appealed from orders entered by him on November 26, 1958.

*Douglas A. Randall,* City Solicitor, for Quincy Retirement Board.

*Roy F. Teixeira,* Assistant Attorney General, for Contributory Retirement Appeal Board.

*Paul A. M. Hunt,* for Cooke.

RONAN, J. The first case is a petition for a writ of certiorari by the Quincy retirement board, hereinafter called the local board, against the contributory retirement appeal board, hereinafter called the appeal board, to quash the decision of the appeal board made on July 27, 1953, reversing the decision of the local board and ordering it to retire a member of the Quincy fire department, a Lieutenant Cooke, for accidental disability. The second case is brought by Cooke for a writ of mandamus ordering the local board to comply with the decision of the appeal board and to grant

him accidental disability retirement. Both petitions were heard together in the Superior Court in April, 1954, and were taken under advisement by the judge who on November 26, 1958, ordered the petition for a writ of certiorari dismissed and granted the petition for a writ of mandamus. The motions of the local board to vacate these orders were denied on February 17, 1959, and appeals were taken to this court.

Both cases arise out of the same occurrence. Cooke alleged that while he was hurrying to a fire on April 29, 1944, he stumbled and fell, landing on his right knee which, he alleges, he has been unable to flex beyond a limited degree although he has undergone two operations which were not successful; that when not in the hospital or at home convalescing, he has been restricted to duty at a fire station answering telephone calls and doing other sedentary work to which he has been assigned by the chief although he (the chief) has felt that it has a demoralizing effect upon the fire fighting force to have a person of Cooke's rank assigned to such work. There was evidence that a lieutenant frequently arrives at a fire before the deputy chief, and is supposed to attack the fire and to lead his squad until the arrival of a superior officer.

On April 8, 1952, Cooke applied to the local board for total and permanent accidental disability retirement under G. L. c. 32, § 7. A medical panel, properly selected in accordance with G. L. c. 32, § 6, and including Cooke's family physician, examined Cooke and unanimously reported to the local board that he "is not mentally or physically incapacitated for further duty in his present position" and that "such disability is not likely to be permanent." They consequently refused to certify incapacity. In a letter signed by the chairman of the panel it was stated that their reasons were that "[h]is [Cooke's] only difficulty appears to be that he is unable to bend the knee beyond a right angle . . . . This type of case should show improvement. He should be able to do some work in the fire department at this time. He certainly could do sedentary work, and

he should be able to walk without trouble on a smooth level. He perhaps should not go up and down ladders, but otherwise we are sure there is a great deal of work he can do." Accordingly the local board ruled Cooke ineligible for retirement under § 7, apparently on the ground that it was bound by the finding of the medical panel that Cooke was not totally and permanently disabled. The appeal board reversed on the ground that "[a]s a matter of law, the board believes that in cases of this kind the 'incapacity' need only be such as to preclude the performance of the duties of the position or work of kindred nature." The appeal board accordingly ordered the local board to grant the retirement. See G. L. c. 32, § 16 (4).

These proceedings were "pending in a court" when G. L. c. 30A, the State administrative procedure act, took effect on July 1, 1955, and they are therefore properly before us. St. 1954, c. 681, § 22. *Gannon* v. *Contributory Retirement Appeal Bd.* 338 Mass. 628. See now G. L. c. 30A, §§ 14, 15.

While the cases were pending after their hearing in April, 1954, and before their decision in November, 1958, the clerk of the Superior Court, apparently not knowing that they had been taken under advisement by the judge, struck them from the active list under Rule 85 of the Superior Court (1954), and they were automatically dismissed on June 5, 1958. The rule does not apply to cases awaiting decision after a hearing.

The conflict between the local board and the appeal board rests upon the position taken by the former that it was bound by the report of the medical panel which had refused to find that Cooke, with the physical limitations under which he was suffering, was "totally and permanently incapacitated" within the meaning of § 7. The appeal board, on the other hand, believing that the refusal of the medical panel to certify disability was the result of the latter's application of an incorrect standard of law, reversed the decision of the local board under the authority of § 16 (4). That section gives the appeal board the power in certain cases (of which the instant case is one) to render de-

cisions upon appeal from the local board which "shall be final and binding" upon the local board and which "shall be complied with by such board." The appeal board is further empowered under § 16 (4) "[o]n appeals involving disability or where medical reports or medical testimony are part of the proceedings . . . [to] employ a registered physician to advise them."

A certification of incapacity is a condition precedent to accidental disability retirement by the local board. *Cassier* v. *Contributory Retirement Appeal Bd.* 332 Mass. 237, 240. *Hunt* v. *Contributory Retirement Appeal Bd.* 332 Mass. 625, 627. *Mathewson* v. *Contributory Retirement Appeal Bd.* 335 Mass. 610, 613–614. Here the medical panel based its refusal to certify disability upon the fact that Cooke was able to do sedentary work, although he was unable to engage in the usual duties of a lieutenant in fighting fires. We agree with the appeal board that in so doing the local board applied an incorrect standard of law. "Disability" is defined in § 7 as total and permanent incapacity "for further duty." We think it a fair reading of the statute that the incapacity referred to is the substantial inability of an applicant to perform the duties of his particular job or work of a similar nature or for which his training and qualifications fit him. See *Frennier's Case,* 318 Mass. 635, 639, and cases cited; G. L. c. 32, § 91A. Compare G. L. c. 32, § 8 (1) (b). As the refusal of the medical panel to certify incapacity was based upon the application of an erroneous standard, see *Cassier* v. *Contributory Retirement Appeal Bd.* 332 Mass. 237, 241, and compare *Mathewson* v. *Contributory Retirement Appeal Bd.* 335 Mass. 610, the local board was not precluded from further action. The proper course for the local board to have followed would have been to resubmit the matter to the medical panel so that the latter could determine, upon application of the correct standard, whether Cooke was "totally and permanently incapacitated." It did not do so, with the result that when the matter came before the appeal board there had been no certification of such incapacity by the medical panel.

We are brought squarely to the question of whether the appeal board could proceed without such certification. We believe it could. The language of § 16 (4) gives the appeal board broad appellate power. The appeal board is empowered to make "final" determinations which are binding upon the local board, and, where medical findings are involved, empowers it to employ a registered physician to aid it in such determinations. Clearly the section envisages cases where the appeal board may disagree with the findings of the medical panel. Nothing in § 16 (4) confines that power to disagree to cases where the medical panel has refused to certify incapacity. On the other hand, it is quite clear that the Legislature intended that no accidental disability retirement be allowed where medical evidence that the applicant is totally and permanently incapacitated is lacking. See § 7.

In reviewing the action of the appeal board, we think it appropriate to point out that a similar case would now be governed by the State administrative procedure act, G. L. c. 30A, which provides in § 14 (8) (in part) that the Superior Court, whose decisions are reviewable by us under § 15 of c. 30A, may set aside a decision of the appeal board if it is "(e) Unsupported by substantial evidence." See *Fort Pond Inn Co.* v. *Director of the Div. of Employment Security,* 324 Mass. 281; *Maniscalco* v. *Director of the Div. of Employment Security,* 327 Mass. 211, 214. Here the appeal board apparently did not think it necessary to appoint a physician as it could have done under G. L. c. 32, § 16 (4). It had before it the detailed report of the medical panel giving the applicant's medical history and condition. The evidence before it included a letter from the surgeon who performed the last operation on the applicant's right knee for the removal of cartilage, which stated (in part): "I am discharging this man because I believe I can be of no further help to him. In my opinion, this man is unfit for work as a fireman because the changes from normal in his knee constitute a hazard for the usual duties of a fireman."

Examinations made of Cooke, some of them more than

eight years after the accident, indicated that his difficulty was a continuing one. The appeal board could determine that his incapacity was therefore likely to be permanent. Section 8 of G. L. c. 32 provides a corrective in the event subsequent reëxaminations prove it to have been wrong in this determination. We cannot say that the finding of the appeal board that Cooke was totally and permanently incapacitated under the terms of § 7 was "unsupported by substantial evidence," and it was within its power, under § 16 (4), to order the local board to grant Cooke disability retirement.

It follows that the orders of the Superior Court dismissing the petition for a writ of certiorari and ordering the issuance of a writ of mandamus were correct and are affirmed.

*So ordered.*