John A. STAADS, Appellee,

v.

**BOARD OF TRUSTEES OF the FIREMAN'S RETIREMENT PENSION FUND OF SIOUX CITY, Edgar S. Higman, Chief of the Fire Department; Robert Wray, City Treasurer; Paul Mahr, Assistant City Attorney; John Donovan, Raymond Mahr, John Murphy and Leonard March, Trustees of the Fireman's Retirement Pension Fund of Sioux City, Appellants.**

No. 52994.

Supreme Court of Iowa.

June 11, 1968.

Rehearing Denied Sept. 4, 1968.

Paul A. Mahr, City Atty., Sioux City, for appellants.

Gill, Dunkle, Beekley & McCormick, Sioux City, for appellee.

GARFIELD, Chief Justice.

Plaintiff Staads brought certiorari in the district court challenging the legality of the denial by defendant Board of Trustees of the Fireman's Retirement Pension Fund of Sioux City (herein called "board" or "pension board") of accidental disability benefits under section 411.6, subds. 5 and 6, Code 1966 upon his retirement as a fireman in the city fire department. The board allowed him ordinary disability retirement benefits under section 411.6, subds. 3 and 4. Following trial upon the record made by the return to the writ and some oral testimony by plaintiff, the court held the evidence did not support the board's order and sustained the writ. The board has appealed.

The medical board referred to in section 411.6 (not the board of trustees of the pension fund) certified plaintiff was mentally or physically incapacitated for further duty as a fireman, such incapacity was likely to be permanent and he should be retired. The controversy is over whether plaintiff is entitled to ordinary disability retirement benefits under 411.6, subds. 3 and 4 or accidental disability benefits under 411.6, subds. 5 and 6.

In order to be entitled to the accidental benefits the member must have "become totally and permanently incapacitated for duty as the natural and proximate result of an injury or disease incurred in or aggravated by the actual performance of duty at some definite time and place * * *" (411.6, 5)

I. The proceeding before the board was instituted by a written application of the chief of the fire department that plaintiff be granted ordinary disability retirement under Code section 411.6, 3 and 4 on the ground he was physically incapacitated for duty and such disability is likely to be permanent. The board accepted the chief's recommendation, referred the matter to the medical board and agreed that plaintiff be notified of the action taken.

The board met again on June 2 with plaintiff and his attorney present—the same attorney plaintiff has consulted for several years and who represented him upon this appeal. The report of the medical board previously referred to, consisting of three medical doctors, was presented to the pension board. Plaintiff's attorney presented an application that accidental disability benefits be granted under section 411.6, subds. 5 and 6.

Attached to this application was a letter to plaintiff, at his request, from a previous fire chief, dated September 10, 1963, listing injuries plaintiff sustained as shown by his personal record from the time he became a fireman on June 16, 1954. The two injuries relied upon are those which occurred April 28, 1955 and November 10, 1961. On the former date plaintiff injured his back when he slipped and fell on edge of door of "rig." He was attended by a doctor at hospital, sent home and off duty one day and three hours. On November 10, 1961 a bundle of heavy, wet paper bags was dropped from a truck on plaintiff's neck, causing a stiff neck. No doctor was called, no time lost.

Also attached to the above application was a letter to plaintiff's attorney at his request from Dr. Mumford dated August 27, 1963. The letter stated that on February 27, 1963 a total laminectomy of plaintiff's fifth lumbar vertebra and a partial hemi-laminectomy of the first sacral segment and the fourth lumbar vertebra were performed. Laminectomy is the surgical removal of the posterior arch of a vertebra. This letter contained this: "Thickening of the ligamentus structures, which in my opinion was of a chronic nature was present, which meant there was difficulty older than the acute symptoms which caused him to be admitted to the hospital. There was also an acute rupture of the disc * * * I am sure was of only short duration. Pathologic study of the removed material revealed chronic inflammation of ligamentus structures, which would mean difficulty prior to this acute episode of pain. In addition of course, the acute ruptured disc was denoted. I trust this is the information you desire."

The surgery this letter refers to was preceded by an injury to plaintiff's back on January 25, 1963, which had no connection with his duties as a fireman, while working for I-Go Moving and Storage Company. While off duty as a fireman plaintiff had worked for I-Go and also at concrete construction. Plaintiff was bent over about to pick up a barrel on January 25 when he told a coworker his back hurt and he couldn't straighten up. He was then told to go into the truck and pack things coworkers would bring him. He finished out the day, the last he worked for I-Go.

At the hearing before the board on June 2 the entire record of injuries reported by plaintiff was presented together with several other letters from Dr. Mumford. On November 12, 1965 plaintiff reported the back fell from a chair in which he was sitting, he "twisted lower back and waist, just a small amount of discomfort, not attended by a physician."

Plaintiff next reported that on April 6, 1966 he was sweeping down some steps when the broom handle broke, causing him

to lose his balance and fall down the remaining four steps to the cement floor, sprained or strained back and hips, a shoulder and an arm. He was attended by a physician.

The final injury plaintiff reported—he was required to report all injuries—occurred on April 5, 1967. To avoid injury from a falling alarm board that was being removed plaintiff twisted his back and pulled back muscles, causing added pain to back and legs. He consulted his physician, Dr. Mumford, who concluded he had strained his back and prescribed a muscle relaxant. The doctor expressed the opinion no particular difficulty would result from this incident.

The record plaintiff submitted to the board as shown by the return to the writ of certiorari reveals that following the surgery on his spine on February 27, 1963, the surgeon released him to return to light work as a fireman as of July 5, and to an eight-hour day on September 7, 1963 with the qualification he must continue treatments. However on September 8 plaintiff again underwent surgery—this time for weakness of his legs and "for re-exploration of the lumbar four and five intervertebral space by Dr. Brown" who permitted him to return to light work again on September 28, 1964.

There was ample evidence before the board, furnished by plaintiff, his attorney or his surgeon, to support the conclusion that plaintiff suffered a herniated disc or discs in his off-duty injury on January 25, 1963 which led to the spinal fusion operation a month later. A written demand by the attorney, dated November 8, 1963, that the city "pay the hospital and medical expenses in whole or in part" following the off-duty injury referred to the injuries of April 28, 1955 and November 10, 1961 and then recited "the acute injury to L4–5 segment of the lumbar spine was as a result of an injury sustained while not in the performance of his duties as a fireman but on other employment with I-Go Company."

The demand agreed that if the city would pay the entire medical and hospital expenses plaintiff would subrogate to the city the proper share thereof determined to be a part of his Workmen's Compensation claim against I-Go.

A written "Notice of Service Connected Disability" evidently prepared by plaintiff's attorney, dated December 2, 1964, of which the city attorney accepted service January 14, 1965, reasserted plaintiff's theory of his claim to accidental disability benefits. This paper again mentioned the service connected injuries of April 1955 and November 1961 and alleged that therein "he suffered a condition to his back which was aggravated by an off duty injury."

It is evident the board did not accept this theory. The evidence before it was not such it was compelled to do so. A report to the fire chief from plaintiff's surgeon, furnished at plaintiff's request, states that following the 1955 injury "he was seen by a physician, apparently X-rays were taken and he stated they were negative." There is other evidence to like effect.

Plaintiff relies upon this statement in the same report: "From his history, the patient could have suffered injury severe enough to weaken the annular ligament of the intervertebral disc which at a later time could cause rupture and the symptoms of which he complained." No doctor expressed the opinion plaintiff's fall in April, 1955 caused or aggravated the herniated disc or discs found nearly eight years later after plaintiff performed the normal duties of a fireman and did such heavy off-duty work as concrete construction and moving furniture. The report by plaintiff of his injury in November 1961 did not mention injury to his back although there is some other testimony he then complained of pain or discomfort there. In any event, as stated, no doctor was called and no time was lost from his duties.

Plaintiff's surgeon also reported to his attorney on November 10, 1964 and at other times that he was 30 percent permanently

disabled, 20 percent of which was the result of his recent injury (we take this to mean the off-duty injury) and 10 percent was a result of "pre-existing condition." The report expressed no opinion as to the cause of the pre-existing condition.

The oral testimony of plaintiff at the hearing on the writ of certiorari (he did not testify at the hearing before the board) was offered "as explanatory of the matters contained in the return." (See Rule 315, Rules of Civil Procedure.) To the board's objection the offer was beyond the scope of the hearing, the court stated "This being an equitable proceeding the ruling is reserved." The findings of fact indicate the court considered the oral testimony as explanatory of the return. However, it adds little to the matters shown in the return.

Plaintiff testified he felt the board's records were very complete; as a part time employee of I-Go Moving & Storage for several years he moved furniture and equipment and did whatever they had to do; after his off-duty injury in January 1963 he had surgery twice on his back—two discs were removed and he had a fusion; after that he worked in the fire prevention bureau and dispatching in the alarm room, without ever driving a fire fighting rig again; prior to his injury at I-Go he was able to do any job the fire department gave him.

II. In sustaining the writ the court found the equities were with plaintiff; his back difficulty arose out of his employment as a fireman, he further aggravated his back condition while on an off-duty job and on three separate occasions while performing his duties as a fireman; the board's finding was not supported by the evidence which clearly shows plaintiff's incapacity for duty was a natural and proximate result of accidents and exposures in performance of his duties.

As conclusions of law the court held the evidence was not in dispute; the board acted arbitrarily in denying plaintiff accidental disability benefits; the evidence supports the conclusion he should be retired with such benefits. The board's order was vacated and costs of the action were taxed to the board.

III. We think the vital question on this appeal is presented by the board's third contention that the trial court erred in holding the evidence established as a matter of law plaintiff was entitled to accidental disability benefits under section 411.6, subd. 5 and by plaintiff's third proposition relied on for affirmance that the court properly held the board's findings were not supported by the evidence and the evidence established as a matter of law plaintiff was entitled to the accidental disability benefits.

■ It is important to keep in mind the nature of certiorari. It lies where an inferior board, exercising judicial functions, exceeds its proper jurisdiction or otherwise acts illegally. Rule 306, Rules of Civil Procedure.

■ We have held many times the functions exercised by the socalled inferior tribunal need not be judicial in the strict or technical sense in which the term is used when applied to courts. It is sufficient if they are quasi-judicial in character. Anderson v. Hadley, 245 Iowa 550, 561, 63 N.W.2d 234, 240 and citations; Hohl v. Board of Education, 250 Iowa 502, 503, 505, 94 N.W.2d 787, 789; Lehan v. Greigg, 257 Iowa 823, 827, 135 N.W.2d 80, 83. We think the board was exercising quasi-judicial functions here.

■ Certiorari is not an equitable proceeding, as the trial court seemed to assume. The action is by ordinary proceedings. Rule 317 R.C.P. This means it is a law action. The evidence before the court was to determine whether the board's acts were legal. Iowa-Illinois Gas & Elec. Co. v. Gaffney, 256 Iowa 1029, 1033, 129 N.W.2d 832, 834, and citations.

■ "As a general rule questions or findings of fact are not reviewable on

certiorari. 14 C.J.S. Certiorari § 172 quoted with approval in Grant v. Norris, supra, 249 Iowa 236, 253, 85 N.W.2d 261, 271." Iowa-Illinois Gas & Elec. case, supra.

 Many other authorities support the conclusion trial de novo is not permitted in certiorari. Commencing with Tiedt v. Carstensen, 61 Iowa 334, 16 N.W. 214, we have uniformly held that where the law clothes an inferior tribunal with authority to reach a decision on the facts submitted to it, its decision is not illegal if the subject matter and the parties are within its jurisdiction and there is evidence to support it. Review of the facts is for the purpose of determining whether the tribunal's decision is supported by any competent evidence. Lineberger v. Bagley, 231 Iowa 937, 941, 2 N.W.2d 305, 307; Circle Express Co. v. Iowa State Commerce Comm., 249 Iowa 651, 654, 86 N.W. 2d 888, 890–891; City of Iowa City v. White, 253 Iowa 41, 48, 111 N.W.2d 266, 270; Wood v. Iowa State Commerce Comm., 253 Iowa 797, 801–802, 113 N.W.2d 710, 712–713; Koelling v. Board of Trustees, 259 Iowa 1185, 146 N.W.2d 284, 296–297, and citations in these opinions. See also Powers v. McCullough, 258 Iowa 738, 741, 140 N.W.2d 378, 381.

 The burden rested on plaintiff to show the board acted illegally as his petition in certiorari alleges. Adams v. Braginton, Iowa, 159 N.W.2d 479, opinion filed June 11, 1968; Sueppel v. Eads, Iowa, 156 N.W.2d 115, 117 and citations; Berleen v. Iowa Dept. of Public Safety, Iowa, 150 N.W.2d 593, 594; Mangan v. Dept. of Public Safety, 258 Iowa 359, 365, 138 N.W.2d 922, 925. See also Rule 344(f) 5, R.C.P.

Some of our opinions indicate that where the facts are undisputed, the conclusion to be drawn therefrom presents only a question of law for the court, not one of fact for the fact-finding body. The statement must be limited to cases where reasonable minds may draw only one conclusion from the proven facts. "Even when the facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them, a jury question is engendered." Rule 344(f) 17, R.C.P.

See in support of what is said above Circle Express Co. v. Iowa State Commerce Comm., supra, 249 Iowa 651, 654, 86 N. W.2d 888, 891. The matter is fully considered and the applicable authorities reviewed in Hassebroch v. Weaver Construction Co., 246 Iowa 622, 625–627, 67 N.W.2d 549, 551–552, which has been many times cited with approval. See also Olson v. Goodyear Service Stores, 255 Iowa 1112, 1115, 125 N.W.2d 251, 254.

 IV. We are satisfied reasonable minds could fairly draw different conclusions from the evidence before the board as to whether plaintiff's total and permanent incapacity for duty was "the natural and proximate result of an injury * * * incurred in or aggravated by the actual performance of duty at some definite time and place," within the sense of section 411.6, subd. 5. Also that such claimed fact was not shown before the board as a matter of law. We think too there was competent evidence before the board to support the decision it reached.

 It is perhaps true there was evidence from which a contrary decision might have been reached. But this would not justify a holding the board acted illegally. Our question, like that before the district court, is not whether there was evidence before the board to warrant a decision it did not make but whether there was evidence to warrant the decision it did make. Daggett v. Nebraska-Eastern Express, Inc., 252 Iowa 341, 351, 107 N.W.2d 102, 108; Hemker v. Drobney, 253 Iowa 421, 424, 112 N.W.2d 672, 674; Wagner v. Otis Radio & Electric Co., 254 Iowa 990, 994, 119 N.W.2d 751, 753. See also Luke v. Civil Service Commission, 225 Iowa 189, 193, 279 N.W. 443.

Many workmen's compensation appeals present a question closely related to the one

we have here—whether there is competent evidence to support the decision of the industrial commissioner. We have repeatedly held in such cases that where the evidence presents a question which should be submitted to a jury, if trial were to a jury, the courts are bound by the commissioner's findings. This is true even though the court might arrive at a different conclusion from the evidence. Bodish v. Fischer, Inc., 257 Iowa 516, 518, 133 N.W.2d 867, 868 and citations; Olson v. Goodyear Service Stores, supra, 255 Iowa 1112, 1115, 125 N.W.2d 251, 253, and citations. It is scarcely open to doubt that plaintiff would not have been entitled to a directed verdict if the hearing before the board had been before a jury.

As before indicated, the theory of plaintiff and his counsel before the board apparently was that his injury of April, 1955 and to a lesser extent that of November, 1961, aggravated by his off-duty injury of January 25, 1963, caused his total and permanent incapacity. As stated, plaintiff's report of his 1961 injury mentioned no injury to his back, no doctor was called, no time lost from his employment. No doctor expressed an opinion plaintiff's fall in April, 1955 caused or probably caused the condition which led to surgery in 1963. During the intervening nearly eight years plaintiff performed all duties of a fireman and for several years did heavy work on off-duty days.

■■ The cause of plaintiff's back condition is essentially a question on which only a medical expert can express an intelligent opinion. Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 379–383, 101 N.W.2d 167, 170–172 and citations. Plaintiff's counsel recognized this by submitting to the fire department from time to time letters from plaintiff's physician apparently intended to support a claim for accidental disability benefits. These letters do not express the opinion the injury plaintiff sustained in 1955 caused or probably caused the disability that arose nearly eight years later or subsequent thereto.

■■ The opinion mentioned before that plaintiff "could have suffered injury severe enough to weaken" the ligament of the intervertebral disc "which at a later time could cause rupture and the symptoms of which he complained," standing alone, was insufficient proof of the claimed causal connection. Bradshaw v. Iowa Methodist Hospital, supra, and citations; Nicks v. Davenport Produce Co., 254 Iowa 130, 134–135, 115 N.W.2d 812, 815.

The letters do not express the opinion plaintiff's back condition was caused by trauma. Plaintiff's oral testimony in the certiorari action, if admissible as "explanatory of the matters contained in the return," that he had never injured his back except as "shown by these records", together with the opinion the doctor expressed in a letter, did not establish the claimed causal connection as a matter of law. The question was one of fact.

We find no support for the conclusion the board acted arbitrarily. As before indicated, plaintiff and his attorney attended the hearing and presented such evidence as they desired. A considerable part of the record on which the board reached its decision consisted of letters from plaintiff's attorney and doctor. As plaintiff conceded in his testimony in this action, the records of the fire department were quite complete so that no oral testimony was offered before the board.

Our decision does not conflict with Butler v. Pension Board of Police Department, 259 Iowa 1028, 147 N.W.2d 27, which affirms by a 5 to 2 vote the trial court's allowance, notwithstanding the pension board's denial, of "accidental" disability benefits upon plaintiff's retirement as a police matron after 25 years service. The opinion holds the uncontroverted evidence showed plaintiff suffered from heart disease developed during her service which disabled her from duties required of her by the municipal code. Mrs. Butler's claim to the pension arose from disease rather than injury so this provision of section 411.6, subd. 5, inapplicable here, applied: "Disease under this section shall

mean heart disease * * * and shall be presumed to have been contracted while on active duty as a result of strain * * *."

After considering all matters presented we must hold the writ of certiorari should have been annulled. For judgment accordingly the cause is

Reversed and remanded.

All Justices concur.