[Civ. No. 34589. Second Dist., Div. Four. Apr. 23, 1970.]

GUY E. MANSPERGER, JR., Plaintiff and Appellant, v.
PUBLIC EMPLOYEES' RETIREMENT SYSTEM,
Defendant and Respondent.

## COUNSEL

William T. Hays and Arnold S. Petersen for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and Edward M. Belasco, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**KINGSLEY, Acting P. J.**—Petitioner appeals from a judgment denying a peremptory writ of mandate to set aside a decision of respondent Public Employees' Retirement System.

Petitioner sought to have the superior court reverse respondent's decisions that petitioner was not physically incapacitated from performing his duties as a fish and game warden within the meaning of Government Code section 21022, and thus was not eligible for disability retirement. An alternative writ of mandate was issued, trial was had, the administrative record was received in evidence, the petition for the writ of mandate was denied, and judgment was entered.

Petitioner has been a fish and game warden for the Department of Fish and Game since June 5, 1950. Petitioner is a warden member under the Public Employees' Retirement Law and is in the class eligible for the special disability retirement allowance provided for safety members.

The general duties of a fish and game warden are set forth in the specifications for that class issued by the California State Personnel Board. These duties include patrolling specified areas to prevent violations and to

apprehend violators; issuing warnings and serving citations; serving warrants and making arrests; investigating wildlife and crop damage complaints and issuing kill permits; seizing equipment used in violations and seizing fish and game illegally taken; feeding animals and game birds during unusual weather conditions; assisting and conducting controlled hunts; investigating water pollution and speaking at civic meetings.

A fish and game warden is a peace officer and has to be able to shoot a gun; he has to remove dead animals by pushing them to the side of the road or putting them in pickup trucks. If the animal is large the wardens may require assistance; a warden may be assigned duties as a beach warden and have to raise lobster traps, pick up sacks of abalones or buckets of clams, rescue people from the water by reaching over the sides of boats and assisting people into boats. A game warden must be able to row a boat and swim 100 yards, board and inspect pleasure and fishing boats, and arrest suspected violators.

Petitioner was performing duties of a beach warden when he suffered injuries to his right arm while arresting a suspect. Dr. Lambert, an orthopedist who examined petitioner, concluded as follows: "The patient is partially disabled because of the condition of the arm, however, it is felt that flexor power of the elbow is diminished by approximately only 20% and with supinator power of the forearm being diminished approximately 40%. However, the patient has good use of the arm other than for the slight limitation of full flexion and no other joint disfunction is evident. The patient therefore is not disabled except for activities requiring heavy lifting and carrying and it does not appear that he normally does this sort of work. I do not therefore believe the patient to be disabled for his usual and customary job activities. His condition is permanent and stationary. No active treatment is indicated. No improvement is to be anticipated in the future."

At the administrative hearing Dr. Lambert testified: "My conclusion was that the patient was not disabled for the usual and customary job activities which had been described to me, based upon the physical findings and based additionally upon the fact that the patient stated that he had been carrying out these duties since his return to work following the injuries."

There was evidence to the effect that petioner could shoot a gun, drive a car, swim, row a boat if he had to (but with some difficulty); pick up a bucket of clams, pilot a boat, and apprehend a prisoner (with some difficulty), but he could not lift heavy weights or carry the prisoner away because that would involve heavy lifting.

Petitioner contends that there was insufficient evidence to support the

judgment of the superior court that petitioner is not incapacitated for the performance of duty within the meaning of section 21022 of the Government Code. Section 21022 of the Government Code[1] reads as follows: "Any patrol or local safety member incapacitated for the performance of duty as the result of an industrial disability shall be retired for disability, pursuant to this chapter, regardless of age or amount of service."

However, the case at bench does not turn on any question of the sufficiency of the evidence in the sense of that term as used in section 1094.5 of the Code of Civil Procedure. The testimony as to the effect of the injury on defendant and his performance of his duties is not in question. The issue is whether the limited incapacity proven and admitted amounts to "incapacity for the performance of duty," as that phrase is used in section 21022.

So far as the briefs indicate, or our own research discloses, that section has never been judicially construed. In a Florida case involving the "incapacity" of an insured, as the term was used in an insurance policy, "incapacity" was defined as inability to the extent of being wholly or permanently unable to do *substantially* all of the material acts that were *usually* required to be performed. (*New England Mut. Life Ins. Co.* v. *Huckins* (1937) 127 Fla. 540 [173 So. 696, 700].) In the case of *Quincy Retirement Board* v. *Contributory Retirement Appeal Board* (1959) 340 Mass. 56 [162 N.E.2d 802, 805], "incapacity" was defined in conjunction with the applicable disability retirement statute. In the *Quincy* case a certification of incapacity was a condition precedent to accidental disability retirement by the local board. The Supreme Court of Massachusetts held that the "incapacity" referred to in that statute was the substantial inability of the applicant to perform the duties of his particular job or work of a similar nature or for which his training or qualifications fit him.

■ While the cases cited above are by no means the same as, or conclusive with respect to, the case at bench, we find the judicial construction of the similar phraseology in the Massachusetts case to be persuasive. We hold that to be "incapacitated for the performance of duty" within section 21022 means the *substantial* inability of the applicant to perform his usual duties.

■ While it is clear that petitioner's disability incapacitated him from lifting or carrying heavy objects, evidence shows that the petitioner could substantially carry out the normal duties of a fish and game warden. The necessity that a fish and game warden carry off a heavy object alone is a

[1]Section 21022 is applicable to petitioner by virtue of Government Code section 21020.5, which reads: "The provisions of this article applicable to patrol members are also applicable to warden members."

remote occurrence. Also, although the need for physical arrests do occur in petitioner's job, they are not a common occurrence for a fish and game warden. A fish and game warden generally supervises the hunting and fishing of ordinary citizens. Petitioner testified that, since his accident, he was able to perform all his required duties except lifting a deer or lifting a lobster trap out of kelp.[2]

Petitioner argues that pension statutes are to be liberally construed. (*Dillard* v. *City of Los Angeles* (1942) 20 Cal.2d 599 [127 P.2d 917]; *Hurley* v. *Sykes* (1924) 69 Cal.App. 310 [231 P. 748].) The object of the disability allowance is not solely to compensate a member with a pension. The disability retirement allowance has as its objective the effecting of efficiency and economy in public service by replacement of employees, without hardship or prejudice, who have become superannuated or otherwise incapacitated. (Gov. Code, § 20001.) Therefore, the primary test before us is whether petitioner is substantially incapacitated from the performance of duty, and the rule on liberality of construction does not change that test.

It follows that the board, and the trial court, properly found that petitioner was not "incapacitated for the performance of duty," within the meaning of section 21022 of the Government Code and, therefore, that he was not entitled to the disability retirement which he sought.

The judgment is affirmed.

Dunn, J., and Irwin, J.,* concurred.

---

[2]Petitioner also argues that he must be able to row a boat and swim 100 yards. Petitioner points to no evidence that he could not row a boat or swim 100 yards, although he does indicate that he once fell when attempting to board a boat.

*Retired judge of the superior court sitting under assignment by the Acting Chairman of the Judicial Council.