**John V. REISNER, Appellant,**

v.

**BOARD OF TRUSTEES OF the FIRE RE-TIREMENT SYSTEM OF the CITY OF DUBUQUE, Iowa, et al., Appellees.**

**No. 55171.**

Supreme Court of Iowa.

Jan. 17, 1973.

O'Connor, Thomas, Wright, Hammer & Bertsch, Dubuque, for appellant.

R. N. Russo, Dubuque, for appellees.

LeGRAND, Justice.

This appeal asks us to decide if plaintiff shall have a disability retirement from the Dubuque Fire Department under section 411.6(5), The Code, 1966, or only a service retirement under section 411.6(2). This, in turn, depends on whether he is physically incapacitated from performing the duties of a fireman. The matter is important because the benefits received for disability retirement are substantially greater than those for service retirement.

The Board of Trustees of the Fire Retirement System (hereafter called the board) denied plaintiff's application for disability retirement. It allowed him a service retirement, for which he qualified under section 411.6(1), The Code, 1966, by reason of having attained the age of 55 and having served more than 22 years on the department.

Plaintiff brought certiorari in the district court to test the legality of the board's decision. The district court affirmed the action of the board, and plaintiff has appealed to us for relief. We affirm the trial court.

I. The facts in the present case are brief. Plaintiff joined the Dubuque Fire Department on October 10, 1943, and served until March 1, 1969. At that time he retired, as we have already pointed out he was entitled to do. However, he seeks the greater benefits awarded those who retire because of physical inability to any

longer perform the duties of their jobs. Plaintiff says he suffers from emphysema which renders him totally and permanently incapacitated for duty as a fireman.

When plaintiff's application for disability retirement was filed, the board referred him to the medical board for examination as provided in sections 411.5(9) and 411.-6(5). He was examined by two members of the medical board. Both doctors gave plaintiff a full and complete medical examination, submitted written reports to the board, and stated conclusions concerning plaintiff's ability to carry on the duties of a fireman. Each stated unequivocally plaintiff was not incapacitated by reason of his emphysema.

Relying on these reports, the board denied the application. Thereafter plaintiff asked that the matter be reconsidered and submitted affidavits from his own physician and from two retired firemen, as well as his own, to support his claim of disability. Upon reconsideration the board affirmed its previous decision.

Plaintiff then brought this certiorari action. The matter was submitted to the district court on the record made before the board, and the district court affirmed the action of the board.

Section 411.5(1), The Code, 1966, establishes a board of fire trustees to administer the statutory retirement system for municipal firemen. Section 411.5(9) provides for a medical board of three physicians who shall "arrange for and pass upon all medical examinations required under the provisions of this chapter and shall report in writing [to the board of trustees] * * * its conclusions and recommendations upon all matters duly referred to it."

We have held the board exercises quasi judicial powers in discharging this part of its statutory duties. The action of the board is properly attacked by certiorari. Staads v. Board of Trustees of Fireman's Retirement Pension Fund, 159 N.W. 2d 485, 489 (Iowa 1968); Butler v. Pen-

sion Board of Police Department, 259 Iowa 1028, 1035, 147 N.W.2d 27, 30 (1966).

Certiorari is an ordinary proceeding triable as a law action. On appeal questions of fact decided by the board are not usually reviewable. We consider only whether the decision is supported by any substantial competent evidence, and the burden of showing illegality rests upon him who asserts it. The fact that others may have reached a different conclusion or that an opposite result would have been fully justified by the evidence is of no importance. Rule 306, Rules of Civil Procedure; rule 317, R.C.P.; Staads v. Board of Trustees of Fireman's Retirement Pension Fund, supra, 159 N.W.2d at pages 489, 490 and citations; Butler v. Pension Board of Police Department, supra, 259 Iowa at page 1035, 147 N.W.2d at page 30, 31 and citations.

II. Plaintiff must establish two facts to qualify for a disability retirement under section 411.6(5). First, he must show he suffers from injury or disease "incurred in or aggravated by the actual performance of duty at some definite time and place"; and, second, he must be totally and permanently incapacitated for duty as the natural and proximate result of such injury or disease.

As to the first requirement, plaintiff is helped by this portion of section 411.6(5):

"Disease under this section shall mean heart disease or any disease of the lungs or respiratory tract and shall be presumed to have been contracted while on active duty as a result of strain or the inhalation of noxious fumes, poison or gases."

Plaintiff quite correctly argues emphysema is a disease within the scope of this statutory definition. Plaintiff's doctor describes it this way:

"Emphysema is a disease of the lungs of a degenerative and permanent nature for which there is no curative treatment.

The condition of emphysema causes the patient's lungs to lose normal elasticity, and therefore, the lungs do not collapse properly in the respiratory process. As a result, one suffering from emphysema, such as Mr Reisner, is not able to expel and displace the air in his lungs as well as one not inflicted with the disease."

We agree with plaintiff, too, that the statute waives the necessity for proving the disease, once shown to exist, was incurred in or aggravated by the actual performance of duty at some definite time and place, as is required in case the disability results from injury rather than disease. The law presumes this to be so. Butler v. Pension Board of Police Department, supra, 259 Iowa at 1034, 147 N.W.2d at 30.

Taking as established the first necessary fact, we next consider whether plaintiff has established he is totally and permanently incapacitated for duty as the natural and proximate result of the emphysema from which he suffers.

It is here we must again remind ourselves we do not pass on the credibility of witnesses nor the preponderance of the evidence. We decide only if there is substantial competent evidence to support the finding the board made.

The evidence before the board was in direct conflict. The two medical board doctors expressed categorical opinions plaintiff was not incapacitated. Plaintiff and his three supporting witnesses (one of whom was a physician) were just as positive in stating he was. All this testimony was submitted in written form and stands unchallenged except as one theory disputes the other. To put it differently, there was no cross-examination to discredit or weaken any of the opinions expressed.

We reach the inescapable conclusion there was substantial evidence to support either result the board may have reached. Plaintiff argues all emphysema is disabling; but this claim must fail in the face of testimony by two physicians (who had the statutory duty to examine plaintiff and report on his condition) that plaintiff's "minimal" or "moderate" emphysema does not incapacitate him from performing his duties. Even if we concede, arguendo, there is both more and better evidence to the contrary, the result must stand under the rules already referred to.

Plaintiff insists the Butler case is squarely in point and dictates a decision in his favor, but we cannot agree. Butler simply held the board had incorrectly applied section 411.6(5), The Code, to *uncontroverted* facts. This was pointed out in distinguishing Staads v. Board of Trustees of Fireman's Pension Fund from the Butler case (159 N.W.2d at page 491). The distinction is equally applicable here, since it cannot be seriously argued the evidence of Drs. McKay and Hazlet does not provide substantial support for the board's decision.

We believe our opinions in the Butler and Staads cases settle the questions raised by this appeal and require us to affirm the trial court.

III. Perhaps we should comment on the trial court's statement that the recommendations of the medical board are conclusive and binding on the board under section 411.6(5). We do not agree. The obligation to pass on applications for disability retirement is lodged in the board of trustees, not the medical board. Section 411.5(9) establishes the medical board and directs it to make examinations and recommendations. We believe this is the true extent of the medical board's authority. Any other interpretation is contrary to the obvious intent of the legislature as expressed in section 411.5(1), vesting general administration over the retirement system and responsibility for its proper operation in the board of trustees. In interpreting this chapter, we must look to all its provisions and to the purpose to be accomplished. Wilson v. Iowa City, 165 N.W.2d 813, 822 (Iowa 1969) and citations. Cf. In

the Estate of DeVries, Iowa, 203 N.W.2d 308, filed December 20, 1972. Viewed in this manner we find no real conflict between sections 411.5(9) and 411.6(5).

We have already implicitly reached this conclusion in the Butler case, where recommendations of the medical board did not prevail, although the matter urged here was not argued there. To the extent the trial court felt the board of trustees was bound we hold it was in error.

However, there is nothing in the record to suggest the board of trustees reached its decision by applying this incorrect rule of law. It reviewed evidence both for and against plaintiff's claim on his request to reconsider the matter and thereafter rejected the application for disability retirement.

We hold there was substantial evidentiary basis for this conclusion, and we therefore affirm the judgment.

Affirmed.

All Justices concur, except Mc-CORMICK, REYNOLDSON, and HARRIS, JJ., who dissent.

McCORMICK, Justice (dissenting).

I respectfully dissent because I think the uncontroverted facts entitle plaintiff to disability retirement as a matter of law.

The majority characterizes the evidence without revealing what it really was. I believe its characterization is inaccurate. Plaintiff was entitled to service retirement on March 1, 1969. On February 5, 1969, he wrote the pension board, recited that he had been under the care of Dr. E. W. Coffman for emphysema since August 2, 1967, and requested disability pension upon his retirement. The board arranged for examination of plaintiff by two doctors. Both examined him a month after his retirement at which time he was employed by Frommelt Industries. The doctors made

separate letter reports to the board. Both found emphysema.

Dr. McKay wrote:

"It is my impression that this man has moderate emphysema. I do not feel that it is incapacitating *at this time*." (italics supplied).

Dr. Hazlet wrote:

"It is difficult to establish any very severe disability even from this patient's complaints. Physical examination, X-rays, and vital capacity studies suggest that he has a very minimal degree of emphysema. It is my impression from physical examination that he has no significant disability *at this time*." (italics supplied).

Neither doctor purported to discuss the effect of emphysema upon plaintiff's duties as a fireman. Each evidently evaluated the condition in terms of its effect upon his industrial employment or his general ability to function. However, as the majority recognizes, the determinative issue is its effect upon his duties as a fireman.

It is also significant that neither doctor made any recommendation as to whether plaintiff should receive a disability pension. Cf. § 411.5(9), The Code.

Based solely upon the letters from the two doctors, without according plaintiff either notice or hearing, the board rejected his request for disability pension. No findings appear in the record. The sole hint of the reason for the board's action is in its secretary's notification letter to plaintiff wherein he was told, contrary to fact, "* * * the doctors have reported that your physical condition does not qualify you for a disability pension."

Subsequently, plaintiff retained counsel who wrote the board to request reconsideration of plaintiff's application, enclosing affidavits of plaintiff, Dr. Coffman, and two retired firemen. The affidavits of plaintiff and the two firemen who had served with him reported his frequent ex-

posure to smoke and other noxious fumes in his duties as a fireman and the exertion involved in fighting fires. Plaintiff pointed out how his emphysema caused shortness of breath and limited his performance prior to his retirement. Dr. Coffman recounted his 1967 diagnosis of plaintiff's emphysema. He added:

"Emphysema is a disease of the lungs of a degenerative and permanent nature for which there is no curative treatment. The condition of emphysema causes the patient's lungs to lose normal elasticity, and therefore, the lungs do not collapse properly in the respiratory process. As a result, one suffering from emphysema, such as Mr. Reisner, is not able to expel and displace the air in his lungs as well as one not inflicted with the disease.

"Mr. John V. Reisner, with his emphysema condition as it existed on the date of his retirement from the City of Dubuque Fire Department in February of 1969 and prior thereto, was physically incapacitated and disabled from the performance of some of the duties required of him as a fireman in that his exposure to smoke, noxious fumes and gases would have an extremely adverse effect upon his condition. Because of the detrimental effect of emphysema upon the respiratory process, Mr. Reisner would be overcome physically by the inhalation of smoke and noxious fumes much more quickly than a fireman not suffering from emphysema. In addition to affecting the performance of his duties, repeated exposures to the inhalation of smoke and noxious fumes and gases would also further aggravate and worssen Mr. Reisner's emphysema condition. Furthermore, physical activity, exertion and strain incidental to his duties would cause Mr. Reisner to become winded and short of breath and therefore adversely affect his ability to perform those duties of a fireman requiring physical endurance. Mr. Reisner's incapacity and disability as stated above is permanent."

Thus, only plaintiff's evidence met the issue of the effect of plaintiff's disease upon his duties as a fireman. Indeed, except in his evidence the record is silent both as to the physiological significance of emphysema and the duties of a fireman. After referring plaintiff's request for reconsideration to its attorney, the board minutes show it reviewed its position on rejection of plaintiff's claim and voted to "uphold its original conclusion for want of any evidence of error."

This case is indistinguishable from Butler v. Pension Board of Police Department, 259 Iowa 1028, 147 N.W.2d 27 (1966). There it was undisputed that Mrs. Butler suffered from heart disease contracted on active duty as a police matron. Five examining doctors agreed Mrs. Butler had heart disease but two of them, members of the medical board, did not think she should have disability retirement. Here it is undisputed that plaintiff suffers from emphysema contracted on active duty as a fireman. Three examining physicians agreed plaintiff has emphysema, but, arguably at least, two of them did not think he should have disability retirement.

In *Butler* the court reviewed the qualifications and duties of a police matron and noting the uncontroverted facts that Mrs. Butler had heart disease and her duties required exertion held she was disabled for duty as police matron within the meaning of Code § 411.6(5). In this case the board's doctors did not even purport to evaluate plaintiff's disease in relation to his duties as a fireman. We are not therefore called upon, as was the court in *Butler*, to reject their recommendations in view of uncontroverted facts.

It is sufficient here to note all doctors agreed plaintiff has emphysema. The disease is degenerative, incurable and permanent. It is established that the disease was caused by inhalation of smoke and noxious gases while plaintiff was on active duty as a fireman. A fireman's duties involve exertion and require efficient respiration.

The disease is aggravated by exposure to inhalation of smoke and noxious gases. The work of a fireman entails such exertion and exposure as a matter of course. Plaintiff can no longer be said to have the qualifications of a fireman and must be viewed as disabled under Code § 411.6(5).

The illegality here as in *Butler* was not in the board's weighing of evidence but in its misapplication of the law. In both situations the boards failed to give effect to the statutory language declaring eligibility for disability pension by reason of "incapacit[y] for further performance of duty." Although we have never judicially construed the language of the statute, we applied it in *Butler* as not requiring a showing of disability from all activity. 259 Iowa at 1033, 147 N.W.2d at 30:

> "To show that she was disabled as a police matron it was not necessary that she be disabled from all activity. A heart condition may disable a police officer. [citation]."

Unless we articulate the standard to be utilized by medical boards and boards of trustees in assessing "incapacit[y] for further performance of duty," we invite future miscarriage of the law similar to that which occurred here. The standard implicit in *Butler* is that one has such incapacity when because of the affliction involved he is unable properly to perform all of the material duties of his position. The Massachusetts court in Quincy Retirement Board v. Contributory Retirement Appeal Board, 340 Mass. 56, 60, 162 N.E.2d 802, 805 (1959), referred to it as "the substantial inability of [a pension applicant] to perform the duties of his particular job or work of a similar nature or for which his training and qualifications fit him." There a fireman with some limitation of right knee flexion because of cartilage removal was held totally incapacitated for duty under a statute similar to ours. See also Mansperger v. Public Employees' Retirement System, 6 Cal.App.3d 873, 86 Cal. Rptr. 450 (1970) (adopting the *Quincy* definition); 1A Appleman, Insurance Law and Practice, § 671 (1965) (disability insurance payable when the insured is unable to perform all of the material duties of his job).

When tested by this standard, any reasonable view of the evidence compels the conclusion as a matter of law that plaintiff is physically incapacitated for further performance of duty as a fireman within the meaning of Code § 411.6(5). Emphysema (like limited knee flexion) is as disabling to a fireman as heart disease to a police matron.

Here, just as in *Butler*, the board misapplied § 411.6(5) and in doing so acted illegally. I would therefore find plaintiff is entitled to a disability pension and reverse the case.

REYNOLDSON and HARRIS, JJ., join in this dissent.