Henry VOHS et al., Appellees,

v.

DISTRICT COMMISSIONERS OF the FRE-
MONT COUNTY, IOWA, SOIL CONSER-
VATION DISTRICT and Mills County,
Iowa Soil Conservation District, Appel-
lants.

Arthur FOSTER et al., Appellees,

v.

DISTRICT COMMISSIONERS OF the FRE-
MONT COUNTY, IOWA, SOIL CONSER-
VATION DISTRICT and Mills County,
Iowa Soil Conservation District, et al., Ap-
pellants.

No. 55997.

Supreme Court of Iowa.

May 22, 1974.

Richard C. Turner, Atty. Gen., Clifford
E. Peterson and James C. Davis, Asst. At-
tys. Gen., for appellants.

Nichols & Leonard, Sidney, for appel-
lees.

McCORMICK, Justice.

These cases arise from action by the de-
fendant soil conservation districts to estab-
lish a soil conversation subdistrict ("sub-
district"). All plaintiffs own land included
in the proposed subdistrict. Plaintiffs in
one case are landowners in the Waubonsie
Creek Drainage District ("drainage dis-

trict"), and plaintiffs in the other are landowners outside the drainage district. They brought separate certiorari actions in district court challenging the legality of defendants' decision to establish the subdistrict. Trial court sustained the writs. We reverse.

Code chapter 467A contains the Soil Conservation Districts Law. None of our prior decisions have dealt with its provisions.

In enacting the statute, the legislature declared its policy was "to provide for the restoration and conservation of the soil and soil resources of this state and for the control and prevention of soil erosion and for the prevention of erosion, floodwater and sediment damages, and thereby to preserve natural resources, control floods, prevent impairment of dams and reservoirs, assist and maintain the navigability of rivers and harbors, preserve wild life, protect the tax base, protect public lands and promote the health, safety and public welfare of the people of this state." § 467A.2, The Code.

In order to permit local watershed protection and flood prevention programs to be carried out and financed by assessment of lands benefited, the statute allows formation of subdistricts of a soil conservation district. § 467A.13, The Code; see 56 Iowa L.Rev. 804, 902 (1971). Landowners who desire formation of a subdistrict may petition the commissioners of the soil conservation district. When 65 per cent of the landowners join such a petition, it is set for hearing. § 467A.14, The Code. All landowners in the proposed subdistrict are given notice. §§ 467A.15, 467A.16, The Code. Upon hearing, the commissioners are required to "consider and determine whether the operation of the subdistrict within the defined boundaries as proposed is desirable, practicable, feasible, and of necessity in the interest of health, safety, and public welfare." When they find it is, they are authorized to establish the subdistrict. § 467A.15, The Code.

In the present situation the landowners' petition was presented to the boards of Mills and Fremont soil conservation districts since the proposed subdistrict included land in both, and the boards acted jointly as a single board of commissioners in conducting the administrative proceedings leading to its formation. See § 467A.17, The Code. A watershed work plan prepared earlier with federal assistance was presented in support of establishment of the subdistrict. Plaintiffs were objectors at the hearing. Upon completion of the hearing defendants decided to establish the subdistrict, to be called the Waubonsie Soil Conservation Subdistrict.

Plaintiffs subsequently brought the present certiorari actions in district court to test the legality of the commissioners' decision. No other means of review of that decision is provided in the statute.

■ Certiorari affords limited review of administrative action. Only questions of jurisdiction or illegality may be raised. Rule 308, Rules of Civil Procedure. In these actions the question presented is whether the commissioners' decision was supported by substantial evidence.

■ There is illegality within the meaning of the certiorari rule "when there is not substantial evidence to support the findings on which the inferior court or tribunal based its conclusions of law." Reed v. Gaylord, 216 N.W.2d 327, (Iowa 1974). Findings of an administrative tribunal may not be upset upon certiorari review in district court when they are supported by substantial evidence unless it is shown the findings resulted from application of an erroneous legal standard. "The fact that others may have reached a different conclusion or that an opposite result would have been fully justified by the evidence is of no importance." Reisner v. Board of Trustees of Fire Retirement Sys., 203 N. W.2d 812, 814 (Iowa 1973).

The proposed subdistrict is in the Waubonsie Creek watershed. The watershed

includes 29,510 acres of agricultural land adjacent to the Missouri River in Mills and Fremont counties in southwestern Iowa. It drains in a southwesterly direction from hills through bottomland to the river. The bottomland is used mostly for grain farming.

Prior to establishment of the drainage district in 1908, Waubonsie Creek flowed out of the upland hills westerly and then southwesterly into tributaries, including one which led to a lake, and into the river. Flooding and sedimentation of the drainage area was frequent and extensive. When the drainage district was established, the Waubonsie Drainage Ditch, for much of its course built in the channel of Waubonsie Creek, carried water straight westward from the bluffs to the river. The Waubonsie ditch has occasionally overflowed since then. Plaintiffs' witnesses attributed the overflow to plugging of the ditch by trees carried down from the hills or to flooding from the river.

In the district court proceeding the work plan advanced to support establishment of the subdistrict was put in evidence. It was developed pursuant to federal statutory authority by the Soil Conversation Service and Forest Service of the United States Department of Agriculture under sponsorship of the Mills County Board of Supervisors, Fremont County Conservation Board, and defendants. The work plan identified sheet and ˙ gully erosion in the upland hills and consequent sediment damage to the Waubonsie Drainage Ditch as problems to be solved by structural installations and conservation practices in the watershed area. The soil retention structures would be constructed with funds from various sources. Establishment of the subdistrict was provided for as an ongoing means of obtaining local funds to operate, maintain and repair them.

The owners of land in the hills would obviously be benefited by erosion control and they did not complain of establishment of the subdistrict. Plaintiffs are owners of land in the flood plain. They contended the present drainage system has been and is sufficient to protect them from flooding and sedimentation, so they would not benefit from establishment of a subdistrict to maintain structures and implement practices to prevent soil from being carried from the hills.

The work plan estimated average annual maintenance costs of the structures at $3,330 and asserted the annual damage in the upland from erosion would be reduced by $51,240 and annual damage from sediment in the drainage ditch would be reduced by $14,950. Hence the theory of benefit to plaintiffs was based on reduction of sedimentation. Plaintiffs in the drainage district would benefit because they would pay much less toward maintenance of soil retention structures to keep the soil in the hills than they would pay to remove it from the ditch. All plaintiffs, under this theory, would enjoin greater protection from the hazard of flooding and siltation.

Several witnesses testified for plaintiffs that the velocity of waters in the Waubonsie ditch is sufficient to scour the ditch and carry hill sediment all the way to the Missouri River. They asserted such sediment as was in the ditch came from the river and not the hills. They relied on personal observation and records of ditch maintenance allegedly showing small expenditures for cleanout work.

Witnesses for defendants disagreed. They contended sediment from the hills was regularly deposited in the ditch requiring periodic cleanouts. They said they observed recent deposits of such sediment in the ditch, and they disputed plaintiffs' assertion that it would be carried away by scouring. They relied on field study and data gathered from state geological records, soil maps, photographs, test drillings, records of the drainage district, and records of the army corps of engineers on expenditures for Waubonsie ditch flood control.

Jean Prior, research geologist for the Iowa Geological Survey and holder of a master of science degree in physical geography, described the history of sedimentation in the watershed area and told how the configuration of the Waubonsie ditch demonstrated substantial sedimentation from the hills had occurred since establishment of the drainage district. She testified the Waubonsie ditch waters would drop their sediment load in the ditch at the point they encountered the backwater of the Missouri. She said test drilling showed sediment had accumulated to a depth of eight feet in the ditch at one point in the last seven years. She also said sedimentation would not be removed by scouring, the ditch would need cleaning because of excessive sedimentation, and silt retention structures in the upland proposed as part of the subdistrict work plan would decrease the sediment load of the Waubonsie ditch and protect the land of plaintiffs from flooding and siltation.

Edwin P. Burr, geologist with the federal soil conservation service and holder of a bachelor's degree in geology, testified he gathered physical data for the subdistrict work plan. He said he observed the silt in and around the ditch and determined it came from the upland and not from the Missouri River as contended by plaintiffs. He described some of it as very recent. He also testified to substantial prior expenditures by the drainage district and corps of engineers to prevent flooding from the Waubonsie ditch. He said, "My opinion is that there will definitely be a benefit from keeping the sediment up on the hills and also reducing and storing some of the water that could possibly cause damage to the lowlands."

Richard W. Birchmier, an area engineer for the federal soil conservation service and professional engineer, testified from data based on cross-sections of the Waubonsie ditch. He said they demonstrated substantial sedimentation since 1964 reconstruction which he identified as coming from the upland and not the Missouri River.

Samuel Tuthill, state geologist and holder of a doctor of philosophy degree in regional geology, supported the testimony of defendants' other experts.

Joseph Ausan, an economist with the federal soil conservation service testified to substantial economic benefits to plaintiffs in the subdistrict work plan attributable to protecting their land from flooding and siltation over a projected 50 year period.

■ Although there is evidence in the record which would support an opposite conclusion, we believe this evidence is sufficient to support defendants' finding that plaintiffs' land would benefit from establishment of the Waubonsie Soil Conservation Subdistrict. Evidence in support of defendants' decision is substantial. Trial court erred in holding otherwise. The writs of certiorari should have been annulled.

We need not consider defendants' other assignments of error.

Reversed.

All Justices concur except REES, J., and MOORE, C. J., who dissent.

REES, Justice (dissenting).

I respectfully dissent.

I do not believe the decision of the defendants to permit the establishment of the Waubonsie Soil Conservation Subdistrict was supported by the required "substantial evidence." I would therefore hold trial court was correct in sustaining the writs of certiorari.

I am persuaded the determination of the trial court that when the commissioners made their decision to establish the watershed district, they based the same on figures and data supposedly before them, but which were in truth compiled and devel-

oped at a later date for purposes of trial in the district court, is of controlling significance.

Trial court found the evidence purporting to show benefits to plaintiffs was "not competent and substantial" but in fact was "false and misleading."

The holding of the majority there was substantial evidence in the record to support commissioners' finding that plaintiffs' lands would benefit from the establishment of the conservation subdistrict is at variance diametrically with trial court's findings of fact and legal conclusions.

On the whole record, I feel the trial court was correct and would affirm.

MOORE, C. J., joins in this dissent.