MALDEN RETIREMENT BOARD *vs.* CONTRIBUTORY RETIREMENT APPEAL BOARD & another.

Middlesex.    May 17, 1973. — July 23, 1973.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Retirement.  Proximate Cause.*

The Contributory Retirement Appeal Board may not substitute its opinion for that of a majority of the medical panel that the disability of an applicant for accidental disability retirement was not proximately caused by an employment related injury, where the panel did not employ an erroneous standard. [423-425]

Reference in the certificate of a medical panel under G. L. c. 32, § 6, to "accident" rather than to "personal injury" did not indicate that the panel misconceived the physical or mental condition of a policeman applying for accidental disability retirement under § 7. [425-426]

BILL IN EQUITY filed in the Superior Court on February 5, 1968.

The suit was heard by *Moynihan,* J.

*Bernard J. Dwyer,* Assistant Attorney General, for the Contributory Retirement Appeal Board.

*James F. Freeley, Jr.,* for Thomas F. Cronin.

*Leo P. DeMarco,* City Solicitor, for Malden Retirement Board.

HALE, C.J.    This is an appeal by the Contributory Retirement Appeal Board (Appeal Board) and Thomas F. Cronin (Cronin) from a final decree of the Superior Court on a bill for judicial review under G. L. c. 30A. On September 3, 1959, Cronin, a patrolman of the police department of the city of Malden, filed an application for an accidental disability retirement allowance pursuant to

G. L. c. 32, § 7. His application was denied by the Malden Retirement Board (local board). On appeal the Appeal Board returned the matter to the local board for the purpose of obtaining a properly executed medical certificate. A new medical panel was named, and it filed a certificate with the local board, which held a new hearing on November 21, 1966. On January 25, 1967, that board denied Cronin's application. Cronin then appealed from that decision to the Appeal Board pursuant to G. L. c. 32, § 16 (4). The Appeal Board reversed the decision of the local board and ordered it to pay Cronin retirement benefits under G. L. c. 32, § 7. The local board then brought this suit for review of that decision under G. L. c. 30A, § 14, and the court entered a decree setting aside the decision of the Appeal Board and ordering it to affirm the decision of the local board.

The facts do not appear to be in dispute. Cronin began his employment with the Malden police department in 1947. In 1950 he injured his right ankle, and in 1955 he reinjured the ankle. Both injuries were sustained while Cronin was performing his duties as a police officer. The Appeal Board found that in the years that followed these injuries Cronin suffered pain in his leg and that this pain caused him to suffer recurrent attacks of anxiety which progressively worsened to the point that Cronin was unable further to perform the duties of a police officer. The medical panel convened pursuant to G. L. c. 32, § 6 (3) (a),[1] conducted an examination of Cronin as required by G. L. c. 32, § 6 (3), and certified to the local board as required by § 6 (3) (a).[2] The certificate stated in effect that (1) Cronin

---

[1] No question is raised as to compliance with the provisions of this section relating to the composition of the medical panel.

[2] "No member shall be retired for disability under the provisions of this section or of section seven unless he has first been examined by a medical panel and unless a majority of the physicians on such medical panel shall, after such examination and after a review of all of the pertinent facts in the case, certify to the board in writing that such member is mentally or physically incapacitated for further duty and that such incapacity is likely to be permanent, and, in any case involving a retirement under section seven, the panel shall further state whether or not the disability is such as might be the natural and proximate result of the accident or hazard undergone on account of which such retirement is claimed under said section. . . ."

was substantially unable to perform all the duties of a police officer, (2) Cronin's disability was likely to be permanent, and (3) the disability was not such as might be the natural and proximate result of the accident or hazard undergone on account of which retirement was claimed.[3] All three members of the medical panel concurred in parts (1) and (2) of the certificate. The opinion expressed in (3) was that of two of the members. The third physician filed a lengthy dissenting report detailing the reasons supporting his opinion that Cronin's disability was causally connected to his accident. The Appeal Board in its decision treated part (3) of the medical panel's certificate as evidence of the facts stated therein and, as the minority member's report "exhaustively set forth reasons for his opinion," the Appeal Board accorded greater weight to that opinion than to the opinion of the majority members of the panel.[4] The judge of the Superior Court set aside the decision of the Appeal Board, ruling that the Appeal Board was without power to grant Cronin's application for retirement in the absence of an affirmative certification by a majority of the medical panel that Cronin's disability was such as might be the natural and proximate result of the accident or hazard undergone on account of which retirement was claimed.

General Laws c. 32, § 7 (1), sets out the conditions for

---

[3] The pertinent part of the certificate reads: "1. Is the above named substantially unable to perform all the duties of Police Officer, City of Malden Police and so a person mentally or physically incapacitated for further duty as such? Yes. If the answer is YES, state DIAGNOSIS. Anxiety State severe including complaints of burning pain in right ankle. 2. Is said disability such that recovery is not reasonably certain within a fairly definite time, so that said disability is likely to be permanent? Yes. (Answer Question 3 only when examining for accidental disability where retirement is sought by reason of a personal injury sustained or a hazard undergone as a result of, and while in the performance of duty at some definite place and at some definite time.) 3. Is said disability such as might be the natural and proximate result of the accident or hazard undergone on account of which retirement is claimed? No."

[4] No contention is made by Cronin that he is entitled to the benefit of the presumption of causal connection provided in G. L. c. 32, § 94. Where such a presumption is operative, the requirement that the medical panel state whether the disability is or is not causally connected does not apply as a condition precedent to granting an application for retirement. *Mathewson* v. *Contributory Retirement Appeal Bd.* 335 Mass. 610, 615-616 (1957). See *McLean* v. *Medford,* 340 Mass. 613, 616-617 (1960).

allowance of an accidental disability retirement application.[5] That section, in conjunction with § 6 (3), reveals a carefully defined procedure for the disposition of such applications. Section 6 (3) (a) requires that the medical panel, following a medical examination of the applicant, issue a certificate as to (1) the applicant's incapacity for further duty, (2) the likelihood that the incapacity is permanent, and (3) "whether or not the disability is such as might be the natural and proximate result of the accident or hazard undergone on account of which such retirement is claimed..." (see fn. 2). The parties in the present case agree that the affirmative answers to parts (1) and (2) supplied by the medical panel furnished a necessary basis for the local board (or the Appeal Board) to give further consideration to Cronin's retirement application.[6] The apparent purpose of the requirement for such affirmative answers is to vest in the medical panel the responsibility for determining medical questions which are beyond the common knowledge and experience of the members of the local board (or the Appeal Board). We therefore consider only the parties' dispute as to whether an affirmative answer to part (3) is also required where a retirement application is brought under § 7.

While the language of § 6 (3) (a), standing alone, does not clearly state that an affirmative certification under part (3) of the medical certificate is a condition precedent

---

[5] That section provides in part: "Any member ... who becomes totally and permanently incapacitated for further duty ... by reason of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties at some definite place and at some definite time ... shall be retired for accidental disability .... No such retirement shall be allowed unless the board, after such proof as it may require, including in any event an examination by the medical panel provided for in subdivision (3) of section six and including a certification of such incapacity by a majority of the physicians on such medical panel, shall find that such member is mentally or physically incapacitated for further duty to the extent and under the circumstances set forth in this section, that such incapacity is likely to be permanent, and that he should be so retired."

[6] It is clear that affirmative answers to parts (1) and (2) are not conclusive and binding on the local board. However, a negative response to either part precludes the allowance of the application unless an erroneous standard was applied by the medical panel. *Quincy Retirement Bd.* v. *Contributory Retirement Appeal Bd.* 340 Mass. 56, 60 (1959).

to local board action, when that section is read in conjunction with the requirement of § 7 (1) of "a certification of such incapacity," the two sections require, for affirmative board action, a certificate of the incapacity and that the incapacity "might be the natural and proximate result of the accident . . .." *Kelley* v. *Contributory Retirement Appeal Bd.* 341 Mass. 611, 614 (1961). See *Hunt* v. *Contributory Retirement Appeal Bd.* 332 Mass. 625, 627 (1955); *Mathewson* v. *Contributory Retirement Appeal Bd.* 335 Mass. 610, 613-614 (1957). Part (3) of the medical certificate serves a purpose similar to that discussed with regard to parts (1) and (2), *i.e.,* it provides an effective vehicle for determining the preliminary medical question which would normally be beyond the competence of the local board. The local board's fact-finding responsibility is not usurped, because part (3) of the medical certificate as defined in § 6 (3) (a) supplies necessary medical fact without which the local board (or the Appeal Board) could not find the ultimate fact of causal connection.[7] "The certification by the medical panel that this incident might have been the cause of the permanent disability is not decisive of the ultimate fact of causal connection. It is 'in the nature of evidence before the local retirement board.' " *Wakefield Contributory Retirement Bd.* v. *Contributory Retirement Appeal Bd.* 352 Mass. 499, 502 (1967). See *Kelley* v. *Contributory Retirement Appeal Bd.* 341 Mass. 611, 614 (1961).

Nothing in G. L. c. 32, § 16 (4), permits the Appeal Board to substitute its opinion for that of the majority of the medical panel responding in the negative to any of the three parts of the medical certificate, unless the panel has employed an erroneous standard (see fn. 6).

We hold that the judge was correct in ruling that the

---

[7] The narrow scope of the medical panel's finding is apparent from the language of § 6 (3) (a): "[W]hether or not the disability is such as *might* be the natural and proximate result of the accident or hazard undergone . . ." (emphasis supplied). An affirmative response would indicate only the medical possibility of service-connection. A negative response would indicate that the medical panel is unable to say that such a possibility even exists.

Appeal Board lacked the power to make the order it did, absent a statement by the medical panel or a majority thereof that Cronin's disability might have been the natural and proximate result of the accident or hazard undergone on account of which retirement is claimed.

Cronin asks us, in the event that we uphold the judge's ruling, to determine whether the majority of the medical panel presented a proper medical certificate to the local board (and the Appeal Board) in accordance with the requirements of G. L. c. 32, §§ 6 and 7. Cronin argues that the third question on the medical certificate is improperly worded, despite the fact that it closely tracks the wording of G. L. c. 32, § 6 (3) (a). He points to the language of § 7 which uses the words "personal injury" instead of the word "accident" appearing in § 6 (3) (a). He contends that his disability arose from a succession of employment related events and is the result of a "personal injury" rather than of an "accident." See *Zavaglia* v. *Contributory Retirement Appeal Bd.* 345 Mass. 483 (1963). He reasons that the medical panel was misled to his prejudice by his answer to a question in his application for retirement calling for a definite time and place at which his personal injury occurred.[8] He requests us to cause the matter to be remanded to the medical panel in order to obtain a "corrected" answer to question three. That there is no merit to this request is revealed by the reports of the medical panel. The dissenting member's report discloses that Cronin suffered from a pre-existing anxiety neurosis which was "grossly aggravated and exacerbated" by an injury received in the performance of his duties. A majority of the panel was of opinion that Cronin's condition existed before the accident and would have developed to its present state even if no accident had happened. Both reports indicate that the use of the word "accident" instead of the

---

[8] "10. If you are applying for retirement for accidental disability, state the personal injury sustained or hazard undergone by reason of which you claim to be incapacitated and the definite place and time the injury was sustained or hazard undergone: Anxiety Neurosis; Swelling of Ankle and Hypertension; Result of Accident sustained on job on November 15, 1950."

words "personal injury" in part (3) of the medical certifi-
cate did not create a misconception of Cronin's physical or
mental condition. The facts underlying Cronin's claim bear
no resemblance to those in the *Zavaglia* case other than
that the disability in each case developed over a long period
of time.

*Decree affirmed.*