DAVID F. WOOLFALL'S CASE. May 18, 1982. This is a worker's compensation case in which the employee seeks to recover for a disability in his right hip. He claims that his present condition was caused by his injury in a work related automobile accident which occurred in Massachusetts on April 13, 1972. In view of the employee's relocation after the accident to the State of Washington, the case was submitted by agreement to a single member of the Industrial Accident Board on a record made before the chief hearing examiner of the Board of Industrial Insurance Appeals of the State of Washington. See generally Locke, Workmen's Compensation § 43 (2d ed. 1981). That record consists of the stenographically transcribed testimony of the employee and his physician in Washington and various medical records. The single member made findings of fact and concluded "after evaluating carefully the medical evidence and testimony as a whole . . . including all warrantable inferences" (1) that "the employee has failed to prove by a fair preponderance of all the evidence that any subsequent disability he had after June 12th, 1972, was in any way related to his industrial injury of April 13th, 1972"; and (2) that "any disability . . . the employee may have incurred in his right hip was not caused by, aggravated, or due to his injury of April 13th, 1972." A reviewing board affirmed and adopted the single member's decision. A judge of the Superior Court entered a judgment affirming the action of the reviewing board. The employee appeals. The sole issue is whether the evidence warrants the findings and conclusions reached by the single member as affirmed and adopted by the board.

It is settled that "the findings and decision of the board are to be sustained wherever possible and . . . they are not to be reversed unless they are wholly lacking in evidentiary support or are tainted by errors of law." *Sweeney's Case*, 3 Mass. App. Ct. 284, 286-287 (1975). See *Chapman's Case*, 321 Mass. 705, 707 (1947); *Brek's Case*, 335 Mass. 144, 147 (1956); *Hale's Case*, 4 Mass. App. Ct. 769 (1976); *Carnute's Case*, 10 Mass. App. Ct. 814 (1980). "It is the exclusive function of the board to consider and

weigh the evidence and to ascertain and settle the facts." *McEwen's Case*, 369 Mass. 851, 853 (1976), quoting from *Chapman's Case, supra*. These rules apply with equal force to the question of causation. That question is "one of fact . . . within the province of the board to determine" based on the medical evidence, and "[u]nless lacking in evidential support it cannot be disturbed . . . ." *Mahoney's Case*, 337 Mass. 629, 632 (1958), and cases cited. *Hachadourian's Case*, 340 Mass. 81, 85 (1959). Thus, as the primary fact finder, the board decides the probative value of the medical testimony, see *Murphy's Case*, 328 Mass. 301, 304 (1952); *Rennie's Case*, 357 Mass. 640, 644 (1970); Locke, Workmen's Compensation, *supra* § 523, and it has the right to reject medical testimony even though uncontradicted.

The employee was admitted to, and spent three days at, the Norwood Hospital for diagnosis and treatment of injuries sustained in the accident. The injuries treated were apparently confined to the employee's head and left eye, and the hospital records contain no reference to, or diagnosis of, any injury to the employee's right hip. Although the employee testified that he complained about his hip to his wife (who did not testify) a few days after his release from the hospital, he made no complaint to a physician until a week or two after the accident. It appears that the employee had lumbar and pelvic X-rays taken on May 11, 1972, and that he received some treatment to his hip by a doctor at the Derry Medical Center in New Hampshire about two months after the accident. There is no indication in the record of any diagnosis made by that medical facility of a specific hip injury. The employee next consulted a physician in Washington in March, 1973, again with no indication in the record of any diagnosis of injury to his hip. In September, 1973, about seventeen months after the accident, he consulted his present physician in Washington, who concluded that he had a torn right hip capsule and ligamentous injury which was likely caused by the accident. This doctor, however, testified that someone incurring a capsular tear would have "pain, swelling, and disability certainly within 12 hours [after the injury], usually more rapidly than that." He also testified that the absence of such symptoms for two weeks after the accident would be "highly unusual." Further, there was admitted, apparently without limitation, an insurance claim form which contained a statement by the doctor that the employee's present complaints about his hip did not arise from his employment.

Measured against the standards for review stated above, we cannot say that the board's decision is wrong as matter of law. Rather, we believe that the board could properly have concluded, based on all the evidence, that the employee had failed to sustain his burden of proof. One can infer from the decision that the single member and the board "discounted [portions of] the testimony of the [employee's] expert completely as was his prerogative," and that the board did the same. *Rennie's Case, supra* at 644. See also *Ferreira's Case*, 294 Mass. 405, 406 (1936); *Mosesso's Case*,

327 Mass. 525, 527 (1951); *Shirley's Case*, 355 Mass. 308, 310 (1969). They could have reasoned that, if the employee had suffered a hip injury as serious as the one ultimately diagnosed as a result of the Massachusetts automobile accident, several objective symptoms of the injury would have been manifested while he was at the Norwood Hospital, or certainly by the time he consulted the physicians in New Hampshire. They could also have concluded that the long period before his present condition was actually diagnosed, and the periods which elapsed between his visits to the several doctors, would, when considered in light of the medical testimony about the pain and disability usually associated with a capsular tear, weigh heavily against the conclusion that his condition was caused by the 1972 accident. Instead, they could have considered the evidence as tending to show that the injury was just as likely to have been caused by other physical activities performed by the employee during the period from June, 1972, to September, 1973, which may not have been known to his physician. The statement made by the physician on the insurance claim form could have been viewed as corroborating this analysis. The fact that this statement may have been a mistake or an oversight by a clerical employee in the doctor's office does not alter its effect, for this is a matter which goes to the weight of the evidence, a determination made only by the board. Compare *McEwen's Case*, 369 Mass. at 854. Some further corroboration could have been found in those portions of the employee's testimony about the efforts demanded by the various jobs which he held after June, 1972, and the relatively little amount of time he was absent from work.

We find no precedent for applying different standards of review solely because the case was decided on a transcribed record without live testimony. "Nor is it material that a reviewing judge trying the issue afresh might make a different finding, for it is not within his prerogative to substitute his judgment for that of the board." *McEwen's Case, supra*. The reasonably detailed nature of the single member's findings and his particular attention to the testimony of the doctor who diagnosed the present injury refute the employee's contention that the board's decision was not predicated on a careful evaluation of the medical evidence as a whole. We conclude that the board's decision, although not compelled, cannot be characterized as one wholly lacking support. It follows that the judgment upholding that decision must be affirmed.

*So ordered.*

*Albert Auburn* for the employee.
*Eugene X. Giroux*, for the insurer, submitted a brief.