Toomey, J.
INTRODUCTION
Pursuant to M.G.L.c. 30A, §14(7), plaintiff Janet Donahue seeks judicial review of a decision of the Contributory Retirement Appeal Board (CRAB) denying her application for accidental death benefits. The plaintiff alleges that the administrative decision was unsupported by substantial evidence and based upon an error of law. For the reasons stated below, this court affirms CRAB’S decision.
BACKGROUND
Janet Donahue is the surviving spouse of John Donahue (the decedent), who worked from July 1, 19 81 to October 9, 1990 as a transportation correction officer at the Worcester County Jail and House of Correction. In that capacity, the decedent transported approximately 25-30 prisoners daily from the jail to courthouses, hospitals and prisons. His duties also included pat-searching and securing the transported prisoners with handcuffs and shackles. In dealing with the prisoners, the decedent was subjected to both verbal abuse and physical resistance.
On October 9, 1990, while securing prisoners for transportation to court, the decedent became ill; his face and ears turned red. His partner took the decedent to see his personal physician, Dr. Agiomavritis, who, for several years prior to 1990, had treated the decedent for hypertension, hyperlipedemia, and arteriosclerosis. (A.R. 42.) While at the doctor’s office on October 9, the decedent was short of breath, sweating, fatigued and nauseous, and his color was poor. Dr. Agiomavritis examined the decedent and advised him not to return to his job “since his employment. . . was putting undue pressure [on him] and [causing an] exacerbation of his medical problems.” (A.R. 42.)
In a letter dated December 8, 1993, Dr. Agiomavritis recalled that, on October 9, 1990, John Donahue was “extremely stressed to the point where his anti-hyperintensive [medication] had to be increased . . . and abstinence from the inciting cause, i.e. his employment was necessary.” (A.R. 112.) The doctor opined that the decedent’s employment involved a great deal of stress, which “along with familial predisposition, dietary habits, etc. stress . . . not only precipitates [hypertension, hyperlipedemia and arteriosclerosis] but also will worsen their course and will accelerate their dreaded consequences such as stroke, heart attack and even death.” (A.R. 112.)
John Donahue took his physician’s advice and did not return to work after October 9, 1990. Between October 1990 and February 1991, he underwent a series of medical examinations. On October 23, 1990, Dr. Subhash Gulati evaluated an abdominal ultrasound and an echocardiogram. He concluded that the results of both tests were normal, and that the carotid scan demonstrated 20-30% stenosis in each carotid artery.
On December 13, 1990, the decedent underwent a thallium exercise test and x-rays, from which cardiologist Dr. Allen Filiberti concluded that the decedent “experienced no chest pain and there were no exercise EKG or scintigraphic findings to suggest [coronary artery disease].” (A.R. 79.) On February 4, 1991, Dr. Filiberti again evaluated the decedent and reported that his EKG was normal and that there was “no evidence of [coronary artery disease] although there are significant risk factors present.” Dr. Filiberti also noted that the decedent had a past smoking history of one pack per day for 35 years, and that he had a positive family history for coronary artery disease and hypertension. Between October 1990 and February 1991, the decedent’s blood pressure was recorded as follows:
October; 160/90 and 130/90
November: 130/85
January: 140/88
February: 134/90
After permanently leaving his job on October 9, 1990, the decedent applied pursuant to M.G.L.c. 32, §7, for accidental disability retirement. In connection with his application, a three-member medical panel convened to examine him. The panel found that he was not disabled.
*286 Before the entire application process for accidental disability retirement could be completed, the decedent, on February 23, 1991, died of cardiogenic shock due to an acute myocardial infarction. The death certificate listed hypertension as a condition contributing to his death. (A.R. 81.) He was 57 years old.
In April 1991, the plaintiff applied to the Worcester Contributory Retirement Board (WCRB) for accidental death benefits. In support of her application, the plaintiff obtained the medical opinion of Dr. Agiomavr-itis and Dr. Lawrence Baker. Dr. Agiomavritis stated that the decedent's death was causally related to his work which, due to its stressful nature, aggravated his arteriosclerotic disease. The physician further opined that “[The decedent’s] case is certainly an example of the relentless progression of the sequelae of hypertension and arteriosclerosis aggravated by long-standing stress, which certainly [the decedent] experienced in his line of duty.” Similarly, Dr. Baker stated that his “demise . . . bears a direct causal relationship to his prior work with the Worcester County House of Correction, as a . . . transportation [corrections] officer.” Dr. Baker reasoned that
His chronic emotional stress which was at a high level for the period that he worked for Worcester House of Correction, i.e., approximately nine years, did indeed cause aggravation of, acceleration of, and hastening of underlying arteriosclerotic disease.
(A.R. 41.)
On June 18, 1992, the WCRB voted to award the plaintiff accidental death benefits, and submitted the application to the Public Employee Retirement Administration (PERA) for review. After PERA initially disapproved the application for lack of supporting documentation, WRCB, on August 31, 1992, submitted further documentation and informed PERA that it reconfirmed its vote to approve the plaintiffs application.
In reviewing the application theretofore approved by WRCB, PERA requested cardiologist Dr. Charles Schulman to examine the decedent’s medical records and to determine whether there was a causal relationship between his death and his employment. Dr. Schulman wrote in a May 15, 1992 letter:
It is my opinion that Mr. Donahue’s death was not related to his job. I base this opinion on evidence that he had multiple risk factors, he last worked in October of 1990, his blood pressure was recorded on several occasions as being normal after that time, and he underwent a normal thallium exercise stress test in December of 1990. More than four months elapsed after the time he last worked until the time of his fatal acute myocardial infarction.
On October 1, 1992, PERA denied the plaintiffs application for accidental death benefits. The plaintiff timely appealed PERA’s decision to CRAB pursuant to G.L.c. 32, §16(4). CRAB assigned the appeal to the Division of Administrative Law Appeals, which held a hearing on December 14, 1993. OnFebruary 15, 1994, the DALA administrative magistrate recommended that CRAB affirm PERA’s denial of benefits. On August 12, 1994, CRAB adopted the administrative magistrate’s decision and affirmed PERA’s decision. Subsequently, the plaintiff petitioned for judicial review under M.G.L.c. 30A, §14, claiming that the defendants’ findings were not supported by substantial evidence, and, specifically, that CRAB applied an erroneous standard of causation. Plaintiffs §14 petition is now before this Court for determination.
DISCUSSION
A reviewing court may set aside an administrative decision if it finds that the substantial rights of a party may have been prejudiced because the decision is defective under M.G.L.c. 30A, §14(7). The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bds., 27 Mass.App.Ct. 470, 474 (1989).
A court’s review of an agency decision is confined to the administrative record. G.L.c. 30A, §14(5). The reviewing court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992); Seagram Distillers Co. v. Alcoholic Beverages Control Comm’n, 401 Mass. 713, 721 (1988). The reviewing court may not substitute its judgment for that of the agency. Southern Worcester County Regional Vocational School Dist. v. Labor Relations Comm’n., 386 Mass. 414, 420-21 (1982). Unless the administrative decision is unsupported by substantial evidence, it will be allowed to stand. Dohoney v. Director of Div. of Employment Security, 377 Mass. 333 (1979). The findings and decision of the agency are to be sustained wherever possible and . . . are not to be reversed unless they are wholly lacking in evidentiary support or are tainted by errors of law. See Woolfall’s Case, 13 Mass.App.Ct. 1070 (1982). That the reviewing court may disagree, on the merits, with the agency’s findings is not grounds for reversal.
With respect to the first of the Woolfall reasons for reversal — evidentiary insufficiency — the court notes that General Laws c. 32, §9(1) authorizes payment of accidental death benefits when an applicant proves by a preponderance of the evidence that the member’s death was a “natural and proximate result of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties.” (Emphasis added.) The statute further provides that “ [N]o payments . . . shall be granted . . . unless such injury was sustained or such hazard was undergone within two years prior to the death of such member . . .” Id.
*287 Accordingly, the plaintiff bears the burden of proving that her spouse’s death was proximately, caused by such an injury or hazard. See, e.g., Cataldo v. Contributory Retirement Appeal Board, 343 Mass. 312, 314 (1961); Campbell v. Contributory Retirement Appeal Board, 17 Mass.App.Ct. 1018, 1019 (1984). She must show proximate causation by a probability or by “more than the possibility or chance” of the existence of a causal connection. Robinson v. Contributory Retirement Appeal Board, 20 Mass.App.Ct. 634, 641 (1985). The plaintiff is not, however, required to eliminate all other possible causes of the decedent’s myocardial infarction, id, but she must demonstrate the relationship known to the law as proximate cause.
Causation is a fact question for CRAB to determine based on medical evidence. Woolfall’s Case, 13 Mass.App.Ct. at 1071, citing Mahoney’s Case, 337 Mass. 629, 632 (1958). The probative value of the expert testimony is for the fact-finding tribunal to decide, and, where there is conflicting expert testimony, the fact finder is empowered wholly to discount the testimony of one expert and to rely exclusively on the other. Robinson v. Contributory Retirement Appeal Board, 20 Mass.App.Ct. at 639; Woolfall’s Case, 13 Mass.App.Ct. at 1071 (1982).
Because causation is a question to be determined by the fact-finder (here, CRAB) and this court is barred by law from conducting a de novo review on the question, the present inquiry is limited to an examination of whether or not CRAB’s findings of fact and decision are entirely lacking in evidentiary support. At bar, CRAB’s reliance upon Dr. Shulman’s opinion is not unreasonable, and, therefore, the Court is constrained to conclude that CRAB’s finding regarding causation was indeed supported by substantial evidence.
Turning next to the second Woojall reason — error of law — the Court concludes that the plaintiff cannot show that CRAB’s decision was tainted by legal impropriety. First, the plaintiff contends that CRAB’s denial of accidental death benefits is erroneous as a matter of law because it is based upon Dr. Schulman’s application of an improper medical standard, to wit, “was not related,” in determining the causal relationship between the decedent’s death and his employment. Relying upon Malden Retirement Board v. Contributory Retirement Appeal Board, 1 Mass.App.Ct. 420, 424, n. 7 (1973), the plaintiff asserts that the appropriate standard to determine causation is whether or not the decedent’s death might be the natural or proximate result of the hazard undergone. The court disagrees.
The causation standard in Malden Retirement Board is applied by regional medical panels to determine whether members shall be retired due to a disability under G.L.c. 32, §6(3)(a). See Malden Retirement Board, 1 Mass.App.Ct. at 424. The plaintiff has proffered no grounds, nor does the court perceive any reason, for the application of the causation standard for disability retirement to a petition for accidental death benefits. Such an exercise in standard transference is best left to the Legislature. Accordingly, the plaintiffs claim that CRAB’s decision is based upon an error of law because it failed to apply the causation standard discussed in Malden Retirement Board must fail.
Second, the plaintiff asserts that CRAB erred as a matter of law by relying upon Dr. Schulman’s medical opinion which did not take into account the fact that the decedent’s stress from employment aggravated his underlying risk factors. The plaintiff is entitled to accidental death benefits if the decedent’s death resulted from the impact upon his already diseased heart of a physical or emotional stress sustained in the performance of his duties. Robinson v. Contributory Retirement Appeal Board, 20 Mass.App.Ct. 634, 641 (1985). See also Baruffaldi v. Contributory Retirement Appeal Board, 337 Mass. 495, 498-99 (1958). In Baruffaldi, the decedent suffered a fatal heart attack the day after engaging in a heated argument at work as a city engineer. The Supreme Judicial Court reversed CRAB’s denial of benefits because CRAB had found that the decedent’s death resulted from the impact of an employment-related argument upon his already diseased heart. See Baruffaldi, 337 Mass. at 498-99.
The case at bar is distinguishable from Baruffaldi in several respects. Unlike Baruffaldi, the instant CRAB determination did not include a finding that the decedent’s death resulted from the impact of any employment-related incident or condition upon his pre-existing health circumstances. Rather, CRAB concluded that the decedent’s multiple risk factors for cardiac disease and the four-month interval between work and death negated any causal connection between his work and his death.[2] Furthermore, in the instant case, the plaintiff attacks CRAB’s factual findings, which this court is bound not to disturb, whereas, in Baruffaldi, only CRAB’s legal conclusion was at issue.
The plaintiff has not demonstrated that CRAB’s decision was unsupported by substantial evidence or based upon an error of law. Therefore, CRAB’s denial of accidental death benefits must stand even though CRAB’s substantive analysis, and its reliance on the Schulman report, give rise to serious concerns that justice may not have been done.
ORDER
For the foregoing reasons, the decision by the Contributory Retirement Appeals Board is AFFIRMED.

Even if this court could conduct a de novo review of CRAB’s findings, the plaintiff would have much difficulty proving causation due to the four-month interval between the decedent’s last day of work and his death. Compare Baruffaldi.