Neel, J.
Pursuant to G.L.c. 30A, §14, plaintiff Gerard Murphy seeks judicial review of a decision by the Contributory Retirement Appeal Board (CRAB) denying his application for accidental disability retirement benefits. The plaintiff alleges that the administrative decision is unsupported by substantial evidence and is based upon an error of law. For the reasons stated below, this Court affirms CRAB’s decision.
BACKGROUND
The plaintiff worked as a licensed stationary fireman for the Boston Housing Authority (BHA) at the Faneuil Housing Project from July 1965 to July 29, 1985. Plaintiff cleaned and maintained the boilers which provided heat and hot water to the residential units. His duties included firing boilers, regulating the fire and drafts, dampers and oil or gas burner controls, and controlling the water levels. This work required occasional strenuous activity, such as pulling on heavy chains fifteen feet high and crawling into tight spaces.
Since approximately 1978, plaintiff has had hypertension. From 1931 to the present, he has smoked two packs of cigarettes daily, except for brief intervals. He has a positive family history for heart disease. Plaintiffs 1977 or 1978 and November 1983 EKG’s were normal. His job entry physical in 1965 revealed no evidence of lung or heart disease or hypertension.
On March 25, 1985, plaintiff complained to his physician, Dr. Thomas Mahoney, that he could not perform his job well and that he had increased difficulty breathing when using stairs. He had chronic productive cough and occasional chest pain radiating to his jaw and lasting about five minutes. An x-ray taken at the time revealed chronic changes. Dr. Mahoney treated plaintiff for chronic obstructive pulmonary disease, which his hypertension medication may have aggravated. Dr. Mahoney suspected that *683 plaintiff had angina pectoris, because of the chest pain episodes. Plaintiffs EKG of March 1985 was negative.
In June 1985 Dr. Mahoney examined plaintiff, who then complained of frequent episodes of numbness in his left arm which led to neurologic testing.
On July 28,1985, plaintiff was working alone at the Faneuil Housing Project. He had cleaned debris out of a boiler, placed the debris in barrels and carried them up fifteen steps to a dumpster six feet high. Returning downstairs, he prepared to hose down the boiler when he experienced sudden severe pain and pressure across his chest and radiating into his jaw and face. He felt weak and nauseous, and sweated profusely for about ten minutes. Plaintiff called the BHA to get a substitute. He got no answer, however, and remained at work in order not to jeopardize his license in the event an incident should occur in his absence. Once home at the end of the day, plaintiff again called the BHA to request a substitute for the following day, but he did not receive permission to be absent.
Plaintiff reported to work the next day, July 29, 1985 at his usual hour. Plaintiff again engaged in strenuous activity. After pulling down on a heavy chain for ten minutes, plaintiff experienced severe chest pain radiating to his jaw and face. After notifying his superiors about his condition, he was able to leave work that morning.
The following day, Dr. S. M. Finklestein examined plaintiff, and ordered that he be evaluated by a cardiologist and that he undergo an EKG, chest x-rays, and blood tests. The EKG, conducted August 2, 1985, was read as evidencing an old inferior wall myocardial infarction. The chest x-ray showed moderately severe chronic pulmonary disease, and the blood tests presented a cholesterol level of 199. Plaintiffs physician prescribed Nitrostat for his chest pains.
In October 1985, Dr. Lawrence Baker examined plaintiff. Based upon plaintiffs medical history, a physical examination, the August 2, 1985 EKG, and an October 1985 EKG which showed a prior inferior wall myocardial infarction, Baker opined that plaintiff had suffered a myocardial infarction on July 28, 1985, and found him disabled.
Based upon the July 28-29, 1985 events, plaintiff received worker’s compensation benefits.
By June, 1986, plaintiff had moved to Florida, where he was under the care of Dr. Robert H. Karl. On June 17, 1986, plaintiff suffered chest pains for approximately thirty minutes. He went to a hospital emergency room and was given an EKG which did not reveal a myocardial infarction. He was diagnosed as having suffered an angina pectoris attack.
On October 27, 1986, plaintiff applied to the Boston Retirement Board (BRB) for accidental disability retirement, based upon the July 28-29, 1985 incidents. In support of the application, Dr. Finklestein submitted his diagnosis of hypertensive heart disease, angina pectoris, hypertension, and chronic obstructive pulmonary disease. Dr. Finklestein certified that plaintiff was substantially and permanently disabled from performing his job as a result of an injury sustained at work. (Administrative Record 47.)
On May 29, 1987, the regional medical panel (the first panel) examined plaintiff and certified that he was permanently substantially unable to perform his job, but “not possibly” as a result of a work injury or hazard. The first panel diagnosed plaintiff as having angina pectoris, hypertension and chronic obstructive pulmonary disease. It noted that plaintiff was being treated with Isordil, a medication for angina. Finding no evidence of acute myocardial infarction or work-related injury, the first panel found no causal relationship between plaintiffs job and his diagnosis. (A.R. 34.)
On January 20, 1988, the first panel re-examined plaintiff, and thereafter issued its report concluding that Murphy was disabled, that the disability was likely to be permanent, and that “there is no conclusive evidence that a myocardial infarction occurred on August 2,1985.” Id. The first panel stated its diagnosis of hypertension, probable angina, and chronic obstructive pulmonary disease. (A.R. 35.)
Upon plaintiffs request for clarification as to the causal relationship, if any, between his “job duties and his underlying coronary artery disease and angina pectoris,” the first panel’s representative, Dr. M.P. Thakur, wrote to the BRB on August 25, 1988:
Effort per se is not recognized as an underlying cause of coronary artery disease. Effort in a patient with existing coronary artery disease may provoke symptoms of angina or acute myocardial infarction. The former does not represent the injury, the latter does. In this applicant’s case, there was no evidence of acute myocardial infarction.
Id. On October 28, 1988, the BRB denied plaintiffs application for an accidental disability retirement.
Plaintiff appealed to CRAB from the BRB decision. CRAB assigned the matter to the Division of Administrative Law Appeals (DALA), which held a hearing on August 8, 1989.
On April 26, 1990, DALA rendered its decision recommending denial of accidental disability retirement. DALA noted the panel’s opinion that plaintiffs symptoms on the days in question were “probable angina,” but that there was no evidence of a myocardial infarction in the August 2, 1985 EKG. CRAB affirmed the BRB decision on September 13, 1990.
On October 18, 1990, plaintiff petitioned for judicial review of CRAB’s decision (Suffolk Super. Ct. Civil Action No. 90-6254). Thereafter the parties agreed to file an Agreement for Judgment and to have the matter remanded for the convening of a second medical panel (the second panel).
*684 On September 11, 1991, the second panel, composed of internist Michael Benari and cardiologists James Smith and Larry Weinrauch, convened and examined plaintiff. The panel concluded that plaintiff had a total and permanent disability, but denied that such disability might be causally related to his employment. The second panel found that
. . . the event of July 28 may have been an episode of myocardial ischemia, however, there is insufficient evidence in the medical record to support this fact . . . [W]e find evidence lacking to support the claim that his disability is on an accidental basis. We disagree with . . . the conclusion that the EKG findings of August 2 prove that Mr. Murphy suffered a myocardial infarction while at work.
(A.R. 67.) The second panel also concluded that the evidence of possible inferior wall damage appearing in the August 2, 1985 EKG could have occurred, if at all, at any time between March and August 1985. The panel opined that there would have been “more in' the way of ST/Q wave inversions if there indeed was a true myocardial infarction back on July 28, 1985.” Id. The panel diagnosed plaintiff as having coronary artery disease.
On November 20, 1991, the BRB denied plaintiffs application for accidental disability retirement. Plaintiff again appealed to CRAB, which assigned the case to DALA for a hearing, held on. May 10, 1994. On August 15, 1994, DALA again recommended that CRAB affirm the BRB’s denial of plaintiffs application, and on December 22, 1994 CRAB did so. (A.R. 2.) Plaintiff then filed the instant action.
DISCUSSION
A reviewing court may set aside an administrative decision if it finds that the substantial rights of a party may have been prejudiced because the decision is defective. G.L.c. 30A, §14(7). The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bds., 27 Mass.App.Ct. 470, 474 (1989).
Judicial review of an agency decision is confined to the administrative record. G.L.c. 30A, §14(5). The reviewing court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992); Seagram Distillers Co. v. Alcoholic Beverages Control Comm’n, 401 Mass. 713, 721 (1988). The reviewing court may not substitute its judgment for that of the agency. Southern Worcester County Regional Vocational School Dist. v. Labor Relations Comm’n, 386 Mass. 414, 420-21 (1982). Unless the administrative decision is unsupported by substantial evidence, it will be allowed to stand. Dohoney v. Director of Div. Of Employment Security, 377 Mass. 333 (1979). The findings and decision of the agency are to be sustained wherever possible and are not to be reversed unless they are wholly lacking in evidentiary support or are tainted by errors of law. See Woolfall’s Case, 13 Mass.App.Ct. 1070 (1982).
General Laws c. 32, §7(1), sets out “the conditions for allowance of an accidental disability retirement application.” Malden Retirement Bd. v. Contributory Retirement Appeal Bd., 1 Mass.App.Ct. 420, 422 (1973). That section, in conjunction with §6(3), “reveals a carefully defined procedure for the disposition of such application.” Id., at 423.
Section 6(3) (a) requires that the medical panel. . . issue a certificate as to (1) the applicant’s incapacity for further duty, (2) the likelihood that the incapacity is permanent, and (3) “whether or not the disability is such as might be the natural and proximate result of the accident or hazard undergone on account of which such retirement is claimed ...”

Id.

Plaintiff argues that CRAB’s decision should be overturned for three reasons: (1) it is against the weight of the evidence; (2) the second medical panel used an erroneous standard; and (3) CRAB is not bound by the second panel’s negative certification on causation. Plaintiffs Memorandum of Law in Support of his Request for Judicial Review (“Plaintiffs Memorandum”).
A. “Weight of the evidence”
It is not for this Court to reverse a decision of CRAB which may be “against the weight of the evidence.” See Retirement Bd. of Brookline v. Contributory Retirement Appeal Bd., 33 Mass.App.Ct. 478, 480 (1992) (reviewing court may set aside CRAB decision only if based upon error of law or unsupported by substantial evidence; under substantial evidence test, reviewing court is not empowered to make a de novo determination of the facts, to make different credibility choices, or to draw different inferences). See Woolfdll’s Case, supra (findings and decision of the agency are to be sustained wherever possible and are not to be reversed unless wholly lacking in evidentiary support or tainted by errors of law). The reviewing court may not substitute its judgment for that of the agency. Southern Worcester County Regional Vocational School Dist. v. Labor Relations Comm’n, supra.
B. “Error of law by the second medical panel”
Plaintiff asserts that
[o]n July 28, 1985 and July 29, 1985, after significant physical effort at work, [plaintiff] experienced classic symptoms of a heart attack and/or angina (severe pain across the chest, face and jaw, nausea and profuse sweating). He has been disabled since that time.
Plaintiffs Memorandum, at 5. Plaintiff thus apparently argues that “his disability stemmed from ‘a single work-related event or series of events,’ ” (ie., on July *685 28 and 29,1985), and was not “the product of gradual deterioration” resulting from “ ‘an identifiable condition . . . that is not common and necessary to all or a great many occupations.’ ” Blanchette v. Contributory Retirement Appeal Bd., 20 Mass.App.Ct. 479, 485 (1985) (citations omitted).
Plaintiff further asserts that,
[w]hile the Second Panel included in its findings that the incidents of July 28 and 29 were episodes of myocardial ischemia, the Second Panel failed to address the issue of whether or not the myocardial ischemia (angina) were caused by Plaintiffs employment.
Plaintiffs Memorandum, at 6. Plaintiff argues that the panel “has narrowly construed the limits of the term ‘injury’ [to exclude angina] and has consequently failed to consider the casual (sic) relationship between [plaintiffs] exertion at work and the angina attacks.” Id., at 7. Plaintiff urges that the Court remand the case for a medical panel review of the medical evidence “utilizing the medical standard of angina as a personal injury ...” Id.
The problem with plaintiffs argument is that the second medical panel did not make the finding he says it did — did not, that is, find that plaintiff experienced myocardial ischemia, or angina, on July 28, 1985. Instead, the panel reported the following:
[Plaintiff] experienced an episode of chest pain while at work on July 28, 1985,[2] however, the true significance of this event remains somewhat mysterious . . . [T]he event of July 28 may have been an episode of myocardial ischemia, however, there is insufficient evidence in the medical record to support this fact.
(A.R. 67.) Where the panel has concluded that plaintiffs claim that he experienced myocardial isch-emia on July 28, 1985, is not supported by medical evidence, its negative answer to the third certification question — whether any work-related event on that day might have caused plaintiff to suffer the angina he claims as his disability — is not on its face erroneous, either as a matter of fact or of law. It is the medical panel’s function to interpret medical evidence; having found plaintiffs claim of myocardial ischemia at work on July 28, 1985 to be unsupported, it would be surprising if the panel had answered the causation question in the affirmative.
Because the second medical panel found that plaintiff failed to support his claim that he suffered myocardial ischemia at work on the day in question, and because the panel nowhere states, as plaintiff asserts, that angina is not an “injury” for purposes of certification under the statute, I conclude that the panel committed no error of law in its certification.
C. “CRAB not bound by medical panel’s negative certification”
Plaintiff argues that CRAB committed an error of law when it stated that an affirmative certification from the medical panel is a “condition precedent” to allowance of accidental disability retirement benefits. Plaintiffs Memorandum, at 7. On the record in this case, there was no error.
A negative certification by a medical panel may not be reviewed by CRAB “if the certificate does not disclose, or if there is no claim of, error of law.” Kelley v. Contributory Retirement Appeal Bd., 341 Mass. 611, 617 (1961). CRAB may not affirm the decision of the local board on a negative certificate “without giving the applicant an opportunity to show such wrong or illegal action, but. . . the applicant does not have an opportunity for a retrial of the medical facts, where there has been a determination of them by the panel, applying proper procedures and correct principles of law.” Id.
Thus, at least where a panel has applied proper procedures and correct principles of law, its affirmative answer to the causation question is a condition precedent. Cf. Quincy Retirement Bd. v. Contributory Retirement Appeal Bd., 340 Mass. 56, 60 (1959). In Malden Retirement Bd. v. Contributory Retirement Appeal Bd., supra, 1 Mass.App.Ct. 420, a Superior Court judge ruled that CRAB was without power to grant an application for retirement in the absence of an affirmative certification by the medical panel that plaintiffs disability might be caused by work-related accident or hazard. The court, noting that nothing in G.L.c. 32, §16(4) (establishing CRAB and defining its powers and duties) permits CRAB to “substitute its opinion for that of the majority of the medical panel responding in the negative to any of the three parts of the medical certificate, unless the panel has employed an erroneous standard,” icL, at 424, affirmed the trial court’s ruling.
In this case, where the Court has already concluded that the second medical panel did not apply an erroneous standard in answering the third question on causation, the panel’s negative answer to that question must stand. Accordingly, a condition precedent to CRAB’s allowance of accidental disability retirement benefits — le., an affirmative certification on causation — has not been satisfied. CRAB’s decision must therefore be affirmed.
ORDER
For the foregoing reasons, the decision of the Contributory Retirement Appeal Board is AFFIRMED.

Plaintiff apparently reported to the medical panel that “on July 28, 1985, he experienced an episode of anterior chest pain radiating to his face lasting approximately 30 minutes and associated with nausea while he was working in the boiler room. He contacted his physician ... the next day and was told to be evaluated with an electrocardiogram.” (A.R. 66.) The panel does not discuss any separate incident on July 29, 1985, nor does their report indicate that such was brought to their attention.