RITA FERRARO *vs.* CONTRIBUTORY RETIREMENT APPEAL
BOARD & another.[1]

No. 01-P-580.

Worcester. January 14, 2003. - April 7, 2003.

Present: RAPOZA, KASS, & DOERFER, JJ.

*Public Employment,* Retirement benefits, Accidental disability retirement.
*School and School Committee,* Cafeteria worker, Retirement benefits.
*Contributory Retirement Appeal Board.*

The Contributory Retirement Appeal Board erred as a matter of law in ruling
that the plaintiff, a school cafeteria worker, had failed to receive majority
approval of a regional medical panel, as required by G. L. c. 32, § 6, when
claiming accidental disability retirement benefits, where the certificates of
only two members of the panel were considered by the defendant and
those two members disagreed. [730-732]

CIVIL ACTION commenced in the Superior Court Department on
January 29, 1996.

The case was heard by *Leila R. Kern,* J.

*Christine G. Narcisse* for the plaintiff.

*Michael Sacco* for the Worcester Retirement Board.

DOERFER, J. The plaintiff, a cafeteria worker in the Worcester
school department, appealed the denial of her claim for ac-
cidental disability retirement benefits through the prescribed
channels of the local board, the Contributory Retirement Appeal
Board (CRAB), and the Superior Court.[2] We hold that CRAB
erred as matter of law in ruling that the plaintiff had failed to
receive majority approval by a regional medical panel where
the certificates of only two members were considered by CRAB
and those two members disagreed.

[1]Worcester Retirement Board.

[2]See *Fairbairn* v. *Contributory Retirement Appeal Bd.*, 54 Mass. App. Ct.
353, 354-357 (2002), for a description of the process by which appeals such
as this one reach this court.

The injury in question occurred in 1981 when the plaintiff lifted a heavy mixing bowl out of a deep sink while at work. She received treatment for back pain and also received workers' compensation payments. In connection with her workers' compensation claim, she was examined and evaluated on several occasions. She never returned to work and remained on workers' compensation until 1991, when her benefits expired.

The plaintiff initially applied for accidental disability retirement benefits in March, 1983, and apparently requested that consideration of her application be deferred while she was receiving workers' compensation benefits. The application was accepted on February 20, 1992. Her claim first was denied by the Worcester retirement board, but was resubmitted for examination by a new medical panel in November, 1993. The new medical panel consisted of Drs. Carver, Metzmaker, and Duff who evaluated the plaintiff on January 25, February 2, and February 4, 1994, respectively.[3] Dr. Carver certified that the plaintiff was disabled and that her disability was permanent, but that the disability was not such as might have been the natural and proximate result of the September 9, 1981, incident. Dr. Metzmaker certified that the plaintiff was disabled, that her disability was permanent, and that there was a causal connection between the disability and the sink incident. Dr. Duff certified that the plaintiff was not disabled. The local board again denied her claim, and her appeal to CRAB followed.

The administrative law judge (ALJ) to whom the case was referred for hearing under G. L. c. 32, § 16(4), ruled that "Dr. Duff's evaluation was not in accordance with []G. L. c. 32, [§] 6(3) and applicable retirement case law. As such his findings are invalid. . . . Both the circumstances of his examination and Dr. Duff's narrative report reflect a disbelieving, somewhat judgemental [sic] attitude toward the Appellant which creates

[3]General Laws c. 32, § 6(3)(a), as amended through St. 1987, c. 697, § 32, requires the regional medical panel to certify whether the physicians on the panel "find [1] that such member is mentally or physically incapacitated for further duty and [2] that such incapacity is likely to be permanent, and [3] in any case involving a retirement under section seven, the panel physicians shall state further whether or not the disability is such as might be the natural and proximate result of the accident or hazard undergone on account of which retirement is claimed under said section seven."

the appearance of bias or lack of objectivity." It is clear that the ALJ, and subsequently CRAB, regarded Dr. Duff's opinion as a nullity[4] — as if it had not been filed — and not merely as a report that was to be considered but was not credible or persuasive.

When a negative certificate of a medical panel member is deficient because an incorrect legal standard has been applied by a physician,[5] CRAB may consider all the evidence, including the certificate, and conclude that the applicant has satisfied her burden on the question addressed by the legally flawed certificate. *Kelley* v. *Contributory Retirement Appeal Bd.*, 341 Mass. 611, 617 (1961), construing *Quincy Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 340 Mass. 56, 61-62 (1959). An applicant has a right to try to persuade CRAB that the applicant should prevail on the whole record. *Ibid.* But when CRAB is not persuaded on the whole record in favor of the claimant where there is a defective negative certificate, CRAB cannot then deny the claim without providing an opportunity for the applicant to supply a certificate that is valid.[6] *Ibid.* When a certificate is invalidated by CRAB on the ground that it was not supplied by a neutral and fair assessment from an unbiased physician, the principles of the *Kelley* and *Quincy* cases should apply. Specifically, the applicant must be given an opportunity to remedy the problem caused by the deficient certificate by trying to persuade CRAB in her favor on the balance of the record; if CRAB is not persuaded, the applicant must then be given an opportunity to supply a certificate that is valid.

---

[4]Although the statute does not expressly establish circumstances that disqualify a panel member, other than prior examination or treatment of the appellant (outside the context of a reviewing panel of some kind), the statute implies that each panel member must act fairly and impartially, employing her or his professional judgment in good faith. Where it is determined from the evidence before the ALJ that a panel member has not so acted, the ALJ is justified in treating the work of that physician as a nullity.

[5]The ALJ also observed that Dr. Duff's narrative demonstrated a lack of understanding of the plaintiff's job description and duties. That error on the part of the doctor, however, was not the sole basis for disregarding his certificate.

[6]Note that there is no relaxation of the requirement that at least two valid certificates be positive on all issues. See *Malden Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 1 Mass. App. Ct. 420, 423-424 (1973).

Here, the plaintiff was not given the opportunity to supply an additional valid certificate. Instead, CRAB disposed of the appeal on the mechanical ground that a "majority" of the medical panel did not affirmatively certify the claim. If CRAB regarded the medical panel as composed of the original three physicians, this ruling was inconsistent with its ruling that Dr. Duff's certificate was a nullity that could not be considered. In effect, CRAB gave the nullified certificate the legitimacy of a negative certificate and thereby considered it in spite of ruling that it would not.

On the other hand, if CRAB viewed the panel as consisting of only two physicians, it is mathematically correct to observe that one vote is not a majority of a panel of two, but the observation is something of a sophistry in this context. The statute requires that a majority of the medical panel certify incapacity affirmatively, G. L. c. 32, § 6(1), and that the panel be composed of three physicians, G. L. c. 32, § 6(3)(*a*). If one panel member is disqualified, two affirmative votes are sufficient, as discussed above. But if the two surviving votes are split, the plaintiff cannot be deprived of her right to the consideration of a third neutral panel member by the simple observation that one is not a majority of two.

The defendant suggests that the evidence before CRAB was ample to permit it to reject the claim. The ALJ and CRAB, however, found the mathematical approach to be definitive.[7] In any event, CRAB was not entitled to deny the claim on a review of the substance of the remaining medical evidence. The plaintiff has a statutory right to obtain a third opinion that might be favorable to her claim and to submit that opinion to the local board for it to render a decision that could then be reviewed by CRAB.

The appropriate remedy is a remand directing CRAB to submit the matter to a new regional medical panel. Sufficient time has passed to make the original panel's work outdated, and there is, of course, no way for a new third member to examine

---

[7]The ALJ did discuss the balance of the evidence and concluded that Dr. Carver's opinion was persuasive and not refuted by other documentary evidence on the case. She did not discuss the opinion of Dr. Metzmaker at all.

the same physical facts as were previously examined.[8] All three members of the new panel must examine the plaintiff.

The Superior Court judgment is vacated, and a new judgment shall enter remanding the case to CRAB for further proceedings in conformance with this opinion.

*So ordered.*

---

[8]The plaintiff also argues that Dr. Carver's narrative contains an unqualified negative answer to question three on causation and, in light of *Noone* v. *Contributory Retirement Appeal Bd.*, 34 Mass. App. Ct. 756, 762 (1993), is, therefore, flawed. But see *Fairbairn* v. *Contributory Retirement Appeal Bd.*, 54 Mass. App. Ct. 353, 357-362 (2002). As we are ordering a new medical panel on other grounds, we need not reach this argument.